# COLUMBIA STEEL CO. v. INDUSTRIAL COMMISSION et al.

No. 5835.   Decided March 22, 1937.   (66 P. [2d] 124.)

*Dickson, Ellis, Parsons & McCrea,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Shirley P. Jones,* of Salt Lake City, for defendants.

MOFFAT, Justice.

This is a review on certiorari for the purpose of reviewing an award made by the Industrial Commission of the state of Utah against the Columbia Steel Company, a corporation, plaintiff, and in favor of Virginia Gentry Nicholes and her minor children, defendants. The husband of Virginia Gentry Nicholes, and father of the minor children, Farrell J. Nicholes, deceased, aged about thirty years, was at the time of his death an employee of the plaintiff, Columbia Steel Company. Farrell J. Nicholes was a graduate electrical engineer from the University of Utah. Since his graduation, and prior to his employment by the Columbia Steel Company, he had been employed part of the time by the United States Mining, Smelting & Refining Company at Midvale, Utah, also for a short time by the Utah Power & Light Company, and part of the time had been out of employment. He had made an application to the Columbia Steel Company for employment indicating his willingness to undertake any sort of employment, and with the hope of advancing as he proved his qualifications. After a time, Mr. Nicholes was interviewed by a representative of the Columbia Steel Company. It was suggested to him that he see the company officials and that he might secure a position. He followed the suggestion. The character of the work was described to him. It was indicated the employment would be at the Columbia Steel Company's mine in Iron county, a short distance out from Cedar City, and that the work would be, at the beginning at least, manual labor.

He became an employee of the Columbia Steel Company in May of 1935. His health at that time was good and prior to that time had been good. Appearance and his own statements indicated he was physically qualified to perform the labor for which he was engaged. Medical examination prior to his beginning work corroborated the statements made as to his health and as to his physical appearance. He worked from May 20, 1935, to July 3, 1935. The record discloses

that during the period he worked at manual labor, as surveyor's helper, mechanical repair work, assistant to driver of a caterpillar tractor, and on the day preceding his death he drove the caterpillar tractor all day. July 3d was the last day deceased worked. Death overtook him about 2 a. m. on the morning of July 4th. July 3d was the only day he spent a full day upon his own responsibility riding and driving the caterpillar tractor. On previous days the time spent driving the tractor was divided between the deceased and one Hillberg, a fellow workman who apparently was the regular tractor driver.

The work in which Nicholes and his fellow workman were engaged was preparatory to opening up a new deposit of iron ore and for the construction of buildings incident to the handling of the ore. It was necessary to build roads, to remove trees and rocks, and level the ground for construction purposes. The work done with the caterpillar consisted of pushing over and uprooting trees and shoving them and rocks and earth off the clearing, and grading and leveling the area. The caterpillar was equipped with a blade in front called a "bulldozer" used in the process. In grading the roads or leveling the ground or pushing over and uprooting trees, the blade was raised or lowered as occasion required hydraulically, and earth and rocks, stumps and roots were pushed ahead or to one side as the grading or leveling proceeded. The areas traversed by the caterpillar were uneven and rough and the caterpillar was subjected to considerable jolting and jarring.

The widow of deceased, and one of the defendants here, testified that for some time prior to her husband's death he had come home from his work tired and preferred to go to bed early, but found the Saturday and Sunday lay off restful which tended to refresh him to return to his work on Monday morning; that he came home from work dirty and covered with dust, the ground was dry and the operation of the caterpillar stirred up considerable dust. She testified that on Monday, the 1st day of July, upon her

husband's returning from work he appeared more tired and weary than usual. On Tuesday, July 2d, he again appeared tired when he came home and complained of pain in his abdomen; that he lay down on the davenport, then got up and lay down on the floor, got up from the floor and paced up and down the room and said, "I must have acute indigestion"; that he took some bicarbonate of soda and some ginger tea, neither of which seemed to relieve him. He did not eat his supper; he went out, milked the cow, came in and went to bed. She also testified that he had not rested well. He declined anything for breakfast except some fruit juice, and remarked he would rather not eat while he had indigestion. On Wednesday, July 3d, upon returning home, she further testified that he appeared very tired and said: "I am tired; I am all in." He complained of pains in his chest and left arm. He had not eaten his lunch that day. He took a bath, ate a little supper, and went to bed. In a few minutes he fell asleep, apparently very soundly though he was usually a light sleeper. At 10 o'clock when she was ready to retire she turned the light on in his room and he woke up. He said he felt better, that the pain had left his chest, but that his arm ached. He went to sleep again and about 2 o'clock in the morning of July 4th she heard his gasp. She turned the light on and found her husband sprawled on the side of the bed unconscious. She sent for a doctor who arrived in about 15 or 20 minutes, but before his arrival her husband was dead.

The testimony about which complaint is made and which plaintiff claims was erroneously admitted, and without which the findings of the commission are without support in the evidence, relates largely to things alleged to have been said by deceased to his wife shortly before his death. She was asked;

"Did he complain of anything?"

She answered:

"He complained of being very weary. He mentioned something about the caterpillar or something being lodged, tearing out some

trees of some sort, I don't remember the exact details. On this occassion he gave evidence of being so tired * * * and he sustained a strain and that is what made him so tired. * * * He remarked the caterpillar had jarred him very much that day."

And,

"Q. When he complained these last two or three days about weariness and about not feeling well, what did he tell you was the cause of it? A. The jolting of the caterpillar. Q. Do you remember his words? A. Yes * * * he said 'the caterpillar sure knocked hell out of me today.'"

It is indicated that defendants made application to the company for compensation. Compensation was refused by the company. About three months after the death of Farrell J. Nicholes, his body was exhumed, and an autopsy held which disclosed that a ruptured aorta was the cause of his death. Application for compensation was then made to the Industrial Commission.

The foregoing, partly narrative and partly quoted, is substantially the evidence relating to the employment of deceased, the nature of his work, incidents connected with its performance, his illness and death. The other testimony connected with the foregoing and upon which the Industrial Commission based its award is that of physicians who testified as to the cause of death as disclosed by the autopsy, and their expert opinions based upon what the autopsy disclosed, and upon the evidence of the witnesses including that of the widow above quoted, and as corroborated in parts or independently as to the employment, the character of the work, and certain incidents relating thereto by other witnesses. The Industrial Commission, among other things, made the following findings:

"III That on or about May 20, 1935, the deceased, Farrell J. Nicholes, was employed by the defendant within the State of Utah in the vicinity of Cedar City, Utah, and was employed by the defendant from that time on and up to and including the date of his death. That the deceased, Farrell J. Nicholes, died early in the morning of July 4, 1935.

"IV That at the time of his death, the deceased was employed by the defendant, working five days per week, and that his regular wages were $24.00 per week. Five days per week was full time employment on the job under construction.

"V That prior to going to work for the defendant the deceased was a strong and able bodied man with no sign or trace of any heart trouble or ailment. That he was 29 years of age and had never had a serious sickness or illness of any kind, and that before going to work for defendant, defendant's doctors gave him a physical examination and passed him as physically sound and fit to perform hard manual labor; that for at least two years prior to going to work for the defendant the deceased had not been engaged in any heavy or manual labor; that he was a man of good habits and did not smoke or drink; that his work with the defendant was manual labor and consisted in part of driving a caterpillar tractor in the leveling off of rough and uneven ground for the erection of a crusher and screening plant and opening up a new ore body and getting out rocks and trees and general work required in the opening up of a new mine and mill; that said tractor subjected the driver to considerable jolting, jarring and shaking and that in driving the said tractor particularly on the 2nd and 3rd day of July, 1935, the deceased was jolted and jarred by his work on said tractor so severely that he sustained a rupture or dissecting aneurysm of the aorta, which rapidly dissected and caused and resulted in the death of the deceased in the early morning of July 4, 1935. That the deceased had no disease of the heart or aorta, was not afflicted with atheroma, did not suffer any emotional stress or strain, and that the jolting and jarring of the tractor was the direct cause of the rupture of the deceased's aorta and the direct cause of the death of the deceased; that the deceased, Farrell J. Nicholes, died as the result of an accident arising out of and in the course of his employment with the defendant in the State of Utah, and his aorta would not have ruptured as it did and deceased would not have died had it not been for the injury and accident he sustained in his work for defendant."

From the findings the Industrial Commission, among other matters, concluded:

"That Farrell J. Nicholes on the 2nd and 3rd days of July, 1935, and particularly on the 3rd day of July, 1935, was injured by reason of an accident arising out of and in the course of his employment while employed by the Columbia Steel Company, an employer subject to the provisions of the State Industrial Act. As a result of said injury and accident the said Farrell J. Nicholes died on the 4th day of July,

1935, leaving surviving him as his sole and only dependents, who were solely dependent upon him for their maintenance and support, Virginia Gentry Nicholes, his widow, and Farrell Gentry Nicholes, Kathleen Nicholes, and Grail Nicholes, minor children of the said Farrell J. Nicholes and Virginia Gentry Nicholes, and that the applicants in this case, the said widow and minor children of the said Farrell J. Nicholes are entitled to compensation from the Columbia Steel Company."

Further orders were made as to funeral expenses, medical services, and attorney's fees not material to be considered here.

The plaintiff complains (1) that the award is based wholly upon incompetent testimony of Virginia Gentry Nicholes, widow of deceased; (2) that there is no evidence that deceased came to his death by reason of an accident arising out of or in the course of his employment; and (3) that the award is based upon opinion evidence of physicians, which opinions were themselves based upon incompetent evidence.

As to the first proposition that the award is based wholly upon incompetent testimony of Virginia Gentry Nicholes, plaintiff submits three cases heretofore decided by this court, namely *Hammond* v. *Industrial Commission*, 84 Utah 67, 34 P. (2d) 687, *Tedesco* v. *Industrial Commission*, 86 Utah 501, 46 P. (2d) 670, and *Boyd* v. *Industrial Commission*, 88 Utah 173, 48 P. (2d) 498, 501. The Tedesco Case and the Boyd Case each cite and approve, as far as applicable, the general rule stated in the Hammond Case. In the Hammond Case the commission had denied compensation for a heart injury resulting in death, upon the ground that all the evidence as to the alleged accident was hearsay and that the applicant had failed to sustain the burden of proof by competent evidence.

Upon certiorari, this court annulled and vacated the decision and order of the commission and remanded the cause for further proceedings.

The rule relating to the admissibility of evidence as to declarations of present pain, suffering, or symptoms, or emo-

tion or physical states of being not generally susceptible of being otherwise proved and made in the presence of medical attendants or others, or declarations that describe or characterize such states, was discussed. The admissibility of such evidence in that case was approved. While the phrase "admissibility of evidence" is commonly used in reference to testimony in industrial cases before the Industrial Commission it is not so much a matter of admissibility or non-admissibility of evidence as it is a matter of competency, relevancy, and materiality of evidence. Much that is incompetent, much that is immaterial, and much that is hearsay goes into the record in a hearing before the Industrial Commission that would be excluded in a court proceeding. The fact that incompetent, immaterial, and hearsay evidence is admitted before the commission is not a ground for disturbing the decision rendered by the Industrial Commission. The limitation placed upon the Industrial Commission is that it shall not base its findings or decision wholly upon incompetent, immaterial, and irrelevant testimony. At times hearsay may throw light upon the general situation in an industrial case, sometimes things that are incompetent and immaterial, in so far as basing a decision upon such matters is concerned, may be helpful to the commission in understanding the situation and interpreting evidence that is material, substantial, and competent. This was evidently the purpose of the Legislature when the statute was enacted:

"The commission shall not be bound by the usual common law or statutory rules of evidence, or by any technical or formal rules of procedure," other than as in the Workmen's Compensation Act provided. R. S. Utah 1933, 42-1-82.

In the Boyd Case it is stated:

"Declarations, whether exclamations, ejaculations, or descriptive, which indicate or describe then presently existing pain or feelings, are competent evidence wherever the fact or issue of pain or feeling is material and when made to one of the medical profession or the laity."

In both the Hammond Case, supra, and the Boyd Case just quoted from it is interesting to note that statements made in the presence of medical attendants "or others," in the Hammond Case, and in the Boyd Case to the medical profession "or the laity," apparently extends the rule to include any one to whom such statements are made. In the Boyd Case the place of the alleged accident was the issue. Hence statements relating to the issue of locality did not tend to bring within the rule of competency or materiality matters relating to injuries or other states of being of the speaker. In that case the Industrial Commission denied compensation and the order was affirmed.

In the Tedesco Case the cause of death was peritonitis resulting from a duodenal ulcer. The applicant failed to show the causal connection between the alleged accident and the duodenal ulcerous condition of the rupture of the duodenum because of the ulcerous condition. The court affirmed the decision of the Industrial Commission denying compensation because of the failure to establish the causal connection between the alleged accident and death even if it had been established that the applicant had been in an accident. It was not established that the accident in any way contributed to the cause of death. We are unable to see how these cases help plaintiff's cause as to excluding the evidence as to its admissibility or materiality.

As will appear when we come to discuss the question of the medical testimony, it was the condition of the deceased immediately prior to his death that was under consideration. The character of his work, his bodily condition as to weariness and otherwise, and the pain he said he suffered were symptoms properly to be taken into consideration by the physicians in connection with the part of the ruptured aorta which was examined and its condition known. The question for determination was whether or not the symptoms were characteristic of the recognized injury, and whether the activity or injury while employed was a contributing cause.

That the deceased said "something about the caterpillar or something being lodged, tearing out some trees of some

sort" other than being descriptive of the employment as unconnected with some strain or presently resulting pain or other symptom of the subjective state would no, without more, be sufficient material evidence upon which to base an award, but when the deceased, in the presence of his wife, remarked without having been questioned about the matter "that the caterpillar had jarred him very much that day," and that "he was weary and not feeling well" due to the "jolting of the caterpillar," and that the "caterpillar sure knocked hell out of me today," he was describing certain physical and subjective states and feelings and symptoms not otherwise susceptible of proof, and it appears that these latter statements come within the rule stated, and were proper to be submitted as information to medical experts in connection with other testimony for the purpose of ascertaining the cause of the injury and the nature and character of it. In connection with this, it is proper to note here that aside from the testimony on behalf of the defendants the plaintiff from its record proved the days and the time when deceased worked upon the caterpillar and at other kinds of employment. There is no question raised but that the plaintiff drove the caterpillar all day during the last day of employment preceding his death. Other witnesses than the widow testified as to the nature of the work, the character of the ground over which the caterpillar was driven, the jolting of the caterpillar, and the general type of work done with it.

There is no merit in plaintiff's first contention to the effect that the award is based wholly upon incompetent testimony of Virginia Gentry Nicholes. This very largely disposes of the contention that the award is based upon opinion evidence of physicians, which opinions were based upon incompetent testimony, and leaves for consideration only the question as to whether or not the deceased came to his death by reason of "accident arising out of or in the course of his employment." R. S. Utah 1933, 42-1-43.

That particular phrase "accident arising out of or in the course of his employment" has probably given rise to more discussion in industrial cases than any other like number of words found in the Workmen's Compensation Act. The plaintiff argues that there is no testimony that the deceased on any occasion during the employment was subject to any unusual stress, strain, or violent exertion, and takes the position that hard work always results in one being tired or fatigued, that weariness and fatigue invariably follow hard work, but that neither of them constitutes any evidence of accident or accidental injury. We think counsel overlooks the fact that while tiredness and fatigue or weariness may not of themselves be evidence of an accident or an accidental injury, yet in the normally healthy person pursuing an occupation in which normally healthy persons do not become tired or weary, those things may be and frequently are symptoms of an unusual condition or a weakness, and may, when properly interpreted, point quite unerringly to a cause when aided by a future examination interpreting or explaining such fatigue, weariness, or condition, bring one within the terms of an accident arising out of or in the course of employment. Plaintiff cites *Tintic Milling Co.* v. *Industrial Commission,* 60 Utah 14, 206 P. 278, 279, 23 A. L. R. 325, for the definition of an accident arising out of or in the course of employment. The case quotes from Honnold on Workmen's Compensation the definition there referred to. The definition laid down by this court in the Tintic Milling Co. case, and the Honnold definition there quoted, has been many times referred to by this court. It is interesting to note in the Tintic Milling Co. Case that the court there indicated if the injury there complained of was merely the continuation of a "disease previously existing, *unaggravated or unaccelerated by any fortuitous event* [italics added] which may be denominated an accident," then the injury would not be compensable. In the same paragraph the court indicates that if the findings of the commission are true, that the gassing in the flue to which the em-

ployee was subjected, was either the direct cause of the tuberculosis or lighted up a dormant condition which existed previously, but which had not incapacitated him from performing his duties as an employee, then the award of the commission should not be disturbed unless it be determined as a matter of law that the injury in question was not the result of an accident. In that case the court affirmed the decision of the commission granting compensation and held that the inhalation of the gas was an untoward, fortuitous, unexpected and unanticipated event which affected the then existing condition of the body of the employee, and hence "an accident."

In *Cherdron Construction Co.* v. *Simpkins*, 61 Utah 493, 214 P. 593, the court indicated that the underlying principle seems to be that the injury must happen suddenly, at a definite time and place, and be undesigned and unexpected. In the case of *Bamberger Coal Co.* v. *Industrial Commission*, 66 Utah 203, 240 P. 1103, where compensation was denied, it was held that there was nothing to show a fall or strain or an overexertion on the part of the deceased. That was a case in which the employee was unloading a car of coal and it was claimed that he had overexerted himself, and while it was shown that the applicant was apparently exhausted and complained of pain, and asked for assistance to get home, the court affirmed the decision of the commission denying compensation. The case of *Hammond* v. *Industrial Commission*, 84 Utah 67, 34 P. (2d) 687, if it did not overrule the case of *Bamberger Coal Co.* v. *Industrial Commission*, supra, it at least presented a situation that is extremely difficult to distinguish upon the facts. The case of *Thompson* v. *Industrial Commission*, 82 Utah 247, 23 P. (2d) 930, is a case relating to an occupational disease. There it is said that an occupational disease has been defined as a diseased condition arising gradually from the character of the employee's work, but is not an accident as an accident is distinguished from an occupational disease in that accident arises from some definite event and the date of which can

be fixed with certainty, but cannot be so fixed from occupational disease.

In the instant case there is no question about an occupational disease. The evidence is clear without contradiction and tends to establish definitely that the employee Farrell J. Nicholes suffered from no occupational disease. Prior to the employment as far as disclosed, he was well, healthy, and vigorous. It is contended that applicant's case is based upon the jolt or jar received while operating the caterpillar. The jolting and jarring of the caterpillar was submitted to the medical experts who testified in the case, and as part of the facts upon which to express an expert opinion. It will appear, when we come to examine their testimony, they did take into consideration that testimony. Plaintiff concedes that there is evidence to that effect. It is argued that there was no competent testimony on behalf of defendants of any severe jolting or jarring. A witness for plaintiff, Mr. Hillberg, operator of the caterpillar tractor with Nicholes, indicated that in operating the tractor there was considerable jolting; that the ground over which the caterpillar operated was rough and uneven; and that there was some jolting to one operating the caterpillar due principally to the roughness of the ground. Taking this situation into consideration and the evidence that before going to work for the plaintiff the defendant was given a physical examination by the plaintiff's doctor, and that the examination disclosed that he was in good physical condition and qualified to undertake such work, and that on the two or three days next preceding his death he came home in the condition that has heretofore been indicated, and that the testimony of plaintiff's witnesses indicated that there was jolting and jarring in driving the tractor and that the deceased drove it all day the day preceding his death, and that on November 7, 1935, an autopsy was performed and at that autopsy the heart and organs around the heart were examined, and it was determined by the physicians making the examination that death was caused by the rupture of the

aorta with hemopericardium, that is the discharge from the aorta resulted in the blood entering the pericardial sac, the sufficiency of the evidence seems apparent. It was shown the aorta was ruptured just above the heart and a short distance above the aortic valves. There was one slit which went partially through the wall of the aorta, and just to the side of that there was another severe extensive laceration several inches long that went about two-thirds through the aorta wall, that this aneurysm had dissected upward for some distance and downward to the pericardium of the heart. At that point the blood was confined to the pericardium. It was not a hemorrhage outside of the aorta; that the aorta has an inner lining called the intima; that the break occurred in the inner lining and then dissected and permitted the blood to escape and separated the lining of the blood vessel.

The autopsy was performed by Dr. Orin A. Ogilvie and he indicated the condition as above set forth. Dr. Ogilvie further indicated that an examination of the heart indicated that the heart was normal with no disease except the imprint upon it evidenced by a mild carditis of the rheumatic type which had healed years before and that this could not have caused the rupture of the aorta in question. The aorta was preserved and examined at the hearing and Dr. Ogilvie testified there was no evidence of any disease whatsoever in the aorta. Dr. Viko corroborated Dr. Ogilvie in this respect and all the doctors, at least to a considerable extent, agreed that things that cause a rupture of the aorta are disease, emotional stress, and physical exertion, and jolting and jarring. The evidence rather definitely excluded the question of either disease or emotional stress. It is possible that there could be some emotional stress involved in the responsibility of an employee taking over a new job of the character of operating a caterpillar tractor. It is a reasonable inference which the commission may draw from all of the circumstances and from the evidence adduced that such emotional stress as might be incident to the new responsibility connected with an increased blood pressure

which might result, and the jolting and jarring of the caterpillar was sufficient to produce the aortic rupture, and it is undisputable that the aortic rupture was the cause of death. There is a conflict in the opinions expressed by the doctors as to the cause of this rupture. Drs. Bailey and Lindem testified that there was a diseased condition of the aorta known as atheroma. These two doctors at the hearing pointed to certain spots on the aorta and designated them as atheromatous plaques. That this was a diseased condition that could cause the aortic rupture. In this conflict of the evidence the Industrial Commission had a right to believe either of the doctors and their findings indicate that they found there was no diseased condition of any kind in the aorta, and while much of the record is taken up with a discussion, examination, and cross-examination of the doctors on both sides of the question, all of them agreed that the aneurysm was of recent origin, some of them testifying that the origin was a matter of hours to days, while others testified that it might have been as long as nine or ten days, ten days being the maximum time given by any of the physicians. Both Drs. Ogilvie and Viko testified that the first rupture and the dissecting aneurysm was the cause of death, that it was of recent origin, and that the jarring and jolting of the tractor not only could cause the rupture, but in their opinion such jolting and jarring were the actual causes of the rupture.

The question therefore is, Does this bring the instant case within the terms of the statute referring to an injury arising by accident out of and in the course of employment? Since the decision in the Tintic Milling Company Case, supra, the question of injury by accident has been prominent in many of the cases in Utah. The question had been before many of the courts, including the courts of England, prior to that time. The Tintic Case, in addition to citing and referring to a number of other cases, including *Fenton* v. *Thorley*, A. C. 43, 72 L. J. K. 789, 5 W. C. C. 1, and the reference made to it from 25 Harvard Law Review 340,

commenting upon the Fenton v. Thorley Case, also referred to the case of *Amalgamated Sugar Company* v. *Industrial Commission*, 56 Utah 80, 189 P. 69, a case where an employee came to his death by inhaling carbon monoxide poison while working in a lime kiln at the employer's factory. In that case the commission treated the occurrence as an accident rather than a disease and awarded compensation which was affirmed by this court.

In the case of *Clover, Clayton & Co.* v. *Hughes*, III B. W. C. C. 275, a case decided by the House of Lords of England, among other things, Lord Macnaughten said that the case was one of a man who had suffered a ruptured aneurysm of his aorta. The real question in that case was whether it was an accident arising out of his employment. The proof had shown that the ruptured aneurysm was caused by a strain arising out of the ordinary work of the deceased, and the fact that the man's condition predisposed him to such an accident was immaterial.

The case of *Clover, Clayton & Co.* v. *Hughes*, supra, was cited with approval in the case of *Cherdron Construction Company* v. *Simpkins*, 61 Utah 493, 214 P. 593, 596. In the Cherdron Case the workman was wheeling a wheel barrow up an incline performing his work in the usual way when he slipped. The employer claimed the injury was not an accident and argued there was no causal connection between the alleged slipping and the injury. A long list of cases is there collected and discussed and it was definitely held

"that the decided weight of authority, under statutes similar to ours, is to the effect that strained effort or overexertion may cause an accidental injury for which compensation will be allowed. The underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place."

There may be some room for differences of opinion as to just how definite the testimony must be as to the time of the alleged accident or as to the particularity of the place. In the instant case, these matters have both been found by the commission and it is not for us to weigh the evidence

upon that question. Dr. Viko's testimony, however, indicated that the

"initial break in the inner lining in my opinion occurred under one of two circumstances, either through temporary rise in blood pressure or another mechanism has been suggested that without change in blood pressure that the external jolting or jarring which happened to occur just at the time when the heart has driven the blood into the aorta and the jar came at that time and that produced it without any necessary change in the blood pressure."

It is further indicated by the medical testimony that jolting and jarring could have caused a rise in blood pressure and, as has been indicated, the emotional reactions from suddenly imposed responsibility or undertaking, a work new to the employee, may have caused such a rise of blood pressure. Whether the rupture of the aorta was accompanied by an increase of blood pressure or what may have produced an increase of blood pressure is not necessarily involved because the Industrial Commission in its finding eliminated everything, but the jolting and jarring, and further found that there was no disease, no evidence of emotional stress or strain, and that the jolting of the tractor caused the aneurysm.

In the case of *Bingham Mines Co.* v. *Allsop*, 59 Utah 306, 203 P. 644, 645, the court said:

"* * * There can be no doubt about the proposition that a finding of the Commission may properly rest upon probabilities. * * *

"The concrete question in this case, therefore, is whether the evidence indicates that the deceased probably came in contact with the electric wiring in a mine tunnel, and whether the resulting shock caused or contributed to his death."

In that case the testimony of Dr. Odell is quite comparable to that of Drs. Viko and Ogilvie in the instant case wherein it is said:

"After eliminating everything as the cause of death except electricity Dr. Odell said that undoubtedly Allsop's death could have been caused by electricity."

It is not always easy to draw a distinction between an accident and an injury. The words are sometimes used interchangeably. See "Personal Injury by Accident" XXV Harvard Law Review, p. 337 et seq. An event or incident might cause an accident to one individual, while the same event or incident might not cause an injury or an accident to another. Making application to a probable situation in the instant case, if Nicholes while holding the shifting lever of the tractor had, because of a sudden jar or jolting, broken his arm, the event would have been an accident. If, however, instead of breaking the arm, the arm holding rigidly to the shifting lever had transmitted the jar or jolt to the body and the jolt and jar caused the aorta to rupture, the case, though more difficult to trace because internal and not immediately observable, would be no less an accident causing injury and compensable. The difference is not in the elements of "injury by accident," but in the proof.

In *Brown's Case*, 123 Me. 424, 123 A. 421, 60 A. L. R. 1293, the petitioner was in apparent good health and while upon the roof of a building shoveling snow suddenly became dizzy, faint, and short of breath. He felt a dull pain in the region of his heart. He went home, continued to suffer symptoms, and three days later called a doctor, who diagnosed the case as acute dilation of the heart. This was held to be a compensable injury, and referring to the word "accident" the court said:

"The word 'accident,' frequently the subject of judicial interpretation, has been recently defined by this court with copious citation of authorities. *Patrick* v. *Ham Co.*, 119 Me. [510] 517, 111 A. 912, 13 A. L. R. 427. By all authorities an occurrence to be accidental must be unusual, undesigned, unexpected, sudden. The word is commonly predicated of occurrences external to the body, e. g., wrecks, explosions, collisions, and other fortuitous mishaps in the world of things about us. Such external accidents may or may not cause bodily injuries. But an internal injury that is itself sudden, unusual, and unexpected is none the less accidental because its external cause is a part of the victim's ordinary work."

The following cases are referred to as indicating various situations and injuries that have been held to be accidents.: *Patrick* v. *Ham Co.*, 119 Me. 510, 517, 111 A. 912, 13 A. L. R. 427. In the case of *McCauley* v. *Imperial Woolen Co.*, 261 Pa. 312, 104 A. 617, the employee came to his death from external anthrax. From the findings it was determined that he received a scratch on his neck in the course of his employment and that anthrax germs entered his body causing his death. It was held that this justified the conclusion that he died as the result of an injury by accident in the course of his employment. In the case of *Winona Oil Co.* v. *Smithson*, 87 Okl. 226, 209 P. 398, an employee in the course of his employment went to a supply store to get some tools and in stepping off of the porch with his arm full of tools he received a jar and ruptured a blood vessel in the left eye causing a hemorrhage. It was held that the employee was entitled to compensation because of an injury by accident arising out of and in the course of his employment. *Larson* v. *Blackwell Lumber Co.*, 48 Idaho 136, 279 P. 1087, 1090, is a case in which an employee lifting some tackle into a wagon and attempting to put a burr on a bolt, an aneurysm was accelerated or aggravated causing death, and even though not unusual was an accident that was compensable under the Workmen's Compensation Act. The court there said:

"The evidence is not seriously in dispute; neither do we think, after a fair and careful analysis of the expert testimony, that the cause of the death of the deceased is in dispute. While his death may have been brought about as a result of the aneurism 'spreading farther than it had been before,' or may have resulted from vegetation breaking away from an aneurism entering the blood stream, and causing a cerebral embolism, either or both of these conditions occurred and were occasioned by reason of the work being done by deceased, and the strain, however slight, incident thereto—an unexpected or untoward event. The expert for respondents testified: 'Now, this man lifted, and probably at that time tore a weak point in a diseased aorta, produced a dissecting aneurism, which later broke into the pericardial sac."

Other and additional cases might be cited and quoted and many more accumulated. We are of the opinion the deceased suffered an accident. The initial rupturing process of the aorta began the injury. The result was an unusual, unforeseen, and unexpected event or occurrence. That the rupture happened suddenly and within a reasonably definite time, and at a reasonably definite place which is fixed with reasonable certainty, is sufficient.

We need not cite cases to the effect that where there is a conflict in the testimony, or where opposing inferences may reasonably be drawn, the commission is final arbiter. There is evidence of the recentness of the rupture as well as the time of the pain and suffering, and that it occurred as a result of driving the tractor.

This case is one in which there is a conflict in the evidence and we are of the opinion that within the authorities there was an accident arising out of and in the course of the employment.

The award of the Industrial Commission is therefore affirmed.

FOLLAND, C. J., and HANSON, WOLFE, and LARSON, JJ., concur.