79 So.2d 513 (1955)
Frank MARTIN, Petitioner,
v.
BOARD OF COUNTY COMMISSIONERS, Manatee County, Florida, and Century Indemnity Company and Florida Industrial Commission, Respondents.
Supreme Court of Florida. Special Division A.
April 13, 1955.
G.O. Lea, Bradenton, for petitioner.
Macfarlane, Ferguson, Allison & Kelly and Hugh C. Macfarlane, Tampa, for Board of County Com'rs, Manatee County and Century Indemnity Co.
Rodney Durrance, Tallahassee, for Florida Industrial Commission.
KANNER, Associate Justice.
This case, arising out of a claim for workmen's compensation, presents a petition for writ of certiorari to review the findings of the deputy commissioner and the Florida Industrial Commission denying the claim for compensation.
The claimant, Frank Martin, had been employed by the Board of County Commissioners of Manatee County for a period of about a year prior to May 31, 1953, as a maintenance mechanic. This work involved maintenance and repair of trucks and road machinery owned by the county. As a part of his duties, he operated an electric and an acetylene welder from time to time. During the last two weeks before Martin ceased his work, his duties comprised more welding than usual. About the last two weeks in May, he began to have frequent coughing spells and developed a tickling sensation in his throat, and about a week before the end of May, he suffered chest congestion and difficulty in breathing. He said that toward the end of May after the coughing started the fumes bothered him but before that he was never bothered by them. On June 2, 1953, *514 he went to Dr. Floyd, who ordered him home from work and diagnosed his ailment as a cold, for which he gave treatment. Then after attending him at his home on several occasions during the succeeding week, he made a diagnosis of bronchitis and asthma.
The determination of this controversy must be based upon the medical evidence. The following does not cover, but rather it is a summation or analysis of pertinent phases of such testimony on the part of the physicians who examined the claimant.
Dr. Floyd, claimant's physician, in his testimony stated in effect that something occurred to cause this asthmatic condition of the claimant and that it could have been caused or aggravated by the fumes from the welding machine which he operated in the course of his employment, but later testified he could not state definitely what caused the asthma. He testified further that in the past Martin had suffered bronchitis, atelectasis (collapse) of the right lung, emphysema, arrested tuberculosis with lesions in the right lung, pulmonary fibrosis, and virus pneumonia "a couple of years ago." He stated that he could not say with medical certainty just what caused or aggravated Mr. Martin's condition. When asked if the virus pneumonia could have had a subsequent effect on a person's respiratory system, making the person more prone to develop colds and bronchial conditions, he replied in the affirmative, but stated further that he did not believe the virus pneumonia played a part in Martin's present condition due to the fact that following it he went back to work. In the surgeon's report filed July 21, 1953, by Dr. Floyd with the Florida Industrial Commission, his findings were that Martin was suffering from pneumonitis, emphysema, bronchitis, and asthma.
On July 21, 1953, the claimant was examined by Dr. H. Phillip Hampton, specialist in internal medicine, who testified as witness for the employer. When asked concerning his opinion as to any causal relationship between the welding fumes and claimant's bronchial asthma, he replied, in effect, that such inhalation of fumes may produce an acute irritation of the bronchial tubes and cause acute bronchitis which is limited to a short duration, but stated, "I know of no inhalation of fumes over a short period of time that leads to a chronic disease process of the lungs. * * * It is a form of an acute irritant that irritates while it is present, but does not leave permanent damage." Under cross examination, when asked by counsel for the claimant, "If Mr. Martin had not developed any of these conditions * * * prior to being exposed to the fumes, it is possible that that could have caused the asthmatic condition, isn't it?" he replied, "In my opinion, it would have been a coincidence. It is a possibility that the inhalation of fumes would have irritated a pre-existing chronic bronchitis or asthma or caused an acute temporary bronchitis, but * * * the effects * * * on this disease process would have been a short duration."
On September 15, 1953, Martin consulted Dr. F.C. Metzger, an allergist, witness for the claimant, who found that Martin was not suffering from any disease other than bronchial asthma. He testified that, in his opinion, exposure to fumes could not alone have aggravated or produced his asthmatic condition; further that bronchitis and asthma are allergies, and that in his opinion people are born with their allergic condition; but when asked if exposure to fumes would aggravate a pre-existent asthmatic condition of which the patient was unaware, he answered in the affirmative. He stated further that an attack of influenza could in his opinion start allergic symptoms; also that he had experienced his usual percentage of success in treating allergic symptoms of welders from the shipyard in World War I only after they had ceased working as welders.
The deputy commissioner found, "That the present disability complained of by the claimant is not the result of an injury by accident arising out of and in the course of his employment with the employer, and that on the basis of the attending physician's report the condition suffered is found to be Pneumonitis, Emphysema, Bronchitis *515 and Asthma. The preponderance of medical opinion offered indicates that there is no causal connection between the present disability and the employment."
The Florida Industrial Commission found in affirming the deputy commissioner's order, that "There is substantial competent evidence in the record to support the order of the deputy commissioner * * *."
The burden is on the claimant to establish a causal connection between his injury and his employment. Reed v. Brinson Electric Co., Fla., 50 So.2d 877. He must show as a prerequisite to recovery that his injury occurred within the course of his employment and was directly attributable to some event or circumstance connected with his work. Gray v. Employers Mut. Liability Ins. Co., Fla., 64 So.2d 650.
We have determined that the substantial evidence rule also applies to medical testimony given in workmen's compensation cases. In this regard in the case of United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741, 745, we stated:
"We have not failed to consider the suggestion that many workmen's compensation cases turn upon a proper evaluation of medical testimony. However, in those cases the `substantial evidence' rule should not be disregarded because the Deputy Commissioner may observe leads, not apparent upon an examination of the transcript of the evidence, which point unerringly to the correct findings of facts. After all, doctors are human. They may be appraised as witnesses and their testimony evaluated, in much the same manner as other witnesses and their testimony are judged and estimated. Doctors vary in degree of ability, as do lawyers, scientists, executives, educators, clergymen and other professional as well as everyday business men. The fact-finding arbiter is usually in a better position than the reviewing body to judge the ability, experience and reputation of the various so-called expert witnesses who appear personally before him and to determine the weight which should be given their testimony. One doctor may have a long list of degrees behind his name, while another has but few. However, the latter might, by his demeanor on the witness stand and by his freedom and clarity of expression, disclose a familiarity with the subject under discussion which far exceeds that of the obstensibly better educated theorist. We are of the opinion the `substantial evidence' rule should be invoked in all cases. Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them."
Although the deputy commissioner found that the "preponderance" of medical opinion indicates no causal connection between the present disability and the employment, which means that the greater weight of the medical opinion is against the claimant and on the side of the employer, nonetheless, when the substantial evidence rule is applied, the evidence here amply supports the finding of the deputy commissioner and the affirmation of such finding by the Industrial Commission. Thus to emphasize this phase, these statements stand out significantly.
Statement of claimant's own physician for many years, Dr. Floyd:
"Q. Could you state definitely what caused this asthma? A. No, of course not.
"Q. Doctor, do I understand your testimony to be to the effect that you cannot say with medical certainty just what caused or aggravated Mr. Martin's condition? A. That is true."
Statement of Dr. H. Phillip Hampton, for the employer:
"Q. If Mr. Martin had not developed any of these conditions that you *516 explained prior to being exposed to the fumes, it is possible that that could have caused the asthmatic condition, isn't it? A. In my opinion, it would have been a coincidence."
Statement of Dr. F.C. Metzger for the claimant:
"Q. In your opinion, could the exposure to fumes, as he was exposed, have aggravated or produced his present asthmatic condition? A. Not alone."
We cannot draw presumptions from the evidence and thereby substitute our judgment for that of the deputy commissioner and the Industrial Commission. Accordingly, the petition for writ of certiorari is hereby denied.
MATHEWS, C.J., and TERRELL and DREW, JJ., concur.