138 So.2d 308 (1962)
Frankie SPIVEY, Petitioner,
v.
BATTAGLIA FRUIT COMPANY, Inc., and Florida Industrial Commission, Respondents.
No. 31310.
Supreme Court of Florida.
February 21, 1962.
*309 Robert E. Sheridan of Gurney, Gurney, & Handley, Orlando, for petitioner.
Jack C. Inman of Berson, Barnes & Inman, Orlando, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
HOBSON, Justice.
Petitioner seeks by petition for writ of certiorari a review by this court of an order of the Florida Industrial Commission in a Workmen's Compensation proceeding, reversing the order of its deputy commissioner and denying to the petitioner benefits under the Florida Workmen's Compensation Act. Florida Statutes, Section 440.01 et seq., F.S.A.
At the time of the alleged injury petitioner had been working for the respondent Battaglia Fruit Company for approximately eight weeks as a packer of citrus fruit. Her work consisted of removing bruce boxes from a bin, packing them with fruit, then sliding them onto a moving conveyor. On the day in question she had been performing these tasks for approximately ten hours when she gradually started having pains in her back and legs. She does not recall the exact moment when the pains began but testified that she was packing grapefruit at the time. She continued working that evening and returned to work the next day. Because of the continuing pain, however, she ceased working after about two hours and sought medical treatment. Her condition was subsequently diagnosed as a herniated intervertebral disc. Corrective surgery was performed for which this claim was filed, together with a claim for other benefits under the Act.
The claim was contraverted on the grounds that claimant had not sustained an accident arising out of and in the course of her employment or alternatively, if there was such an accident that the petitioner's condition was not the result of the accident.
At the hearing on the claim evidence was introduced showing the circumstances of the injury to be substantially as summarized above. In addition it appeared that the claimant had had no prior history of back trouble and that in the opinion of the doctors who examined her the ruptured disc was causally related to the work which she was performing at the time she began to feel pain. The deputy commissioner entered *310 an order awarding the claimant compensation benefits and held "that a ruptured disc when caused by job activity as it occurred in this case constitutes an accident within the definition of the Workmen's Compensation Law".
On application for review the full commission reversed. It was first held that the order of the deputy, which for the most part merely recited and summarized testimony which the deputy had heard, did not conform to the requisites of order writing as set forth in Hardy v. City of Tarpon Springs, Fla., 81 So.2d 503; Andrews v. Strecker Body Builders, Fla., 92 So.2d 521; Ball v. Mann, Fla., 75 So.2d 758. The commission went on to hold, however, that based on the evidence which the deputy had before him there was no showing of any "accident" within the meaning of the Workmen's Compensation Act. In so holding the commission relied on the case of Gray v. Employers Mutual Liability Insurance Company, Fla., 64 So.2d 650, which, as the commission recognized, established the "unusual result" test as a criterion for the existence of an accident.[1] The commission went on to hold that the Gray case "did not relieve the claimant of showing some event or circumstance connected with his work to which his injury can be directly attributed". It is noteworthy that the commission, while extracting the above quoted language from the Gray case, quoted the word "circumstance" in the singular, whereas in the Gray case it is plural. Gray v. Employers Mutual Liability Insurance Company, supra, at page 651. The difference, as will be hereinafter pointed out, is material.
The issue with which we are presented then is whether there was competent, substantial evidence to support the deputy's finding that the petitioner had suffered a compensable injury by accident within the meaning of the Workmen's Compensation Act.
Section 440.02(6) defines injury as follows
"The term `injury' means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury."
Section 440.02(19) provides in pertinent part:
"`Accident' shall mean only an unexpected or unusual event or result, happening suddenly. * * * Where a pre-existing disease is accelerated or aggravated by accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable."
As pointed out in the footnote one, supra, the words "or result" were inserted in the above statutory provision by act of the 1953 Legislature. Section 440.09(1) provides in part:
"Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment."
A study of these statutes reveals that there are set forth several separate requirements which must be satisfied before it can be held that there has been an accident within the meaning of the act. *311 First, there must be an unexpected or unusual event or result happening suddenly. It is plain from the statutory definition that the elements of unexpectedness and suddenness can refer to either an event or a result. The accident must also arise out of and in the course of employment. The words "in the course of employment" refer to the time, place and circumstances under which the accident occurs while the words "arising out of" refer to the origin or cause of the accident. Bituminous Casualty Corp. v. Richardson, 148 Fla. 323, 4 So.2d 378. In order to satisfy these requirements there must be some causal connection between the injury and the employment or the injury must have had its origin in some risk incident to or connected with the employment or have flowed from it as a natural consequence. Sweat v. Allen, 145 Fla. 733, 200 So. 348. It has been held that in order to establish the causal connection inherent in the requirement that the injury must arise "out of" the employment, it must be shown that the injury was directly attributable to some event or circumstances connected with the accident. Martin v. Board of County Commissioners, Manatee County, Fla., 79 So.2d 513. However, it was stated by this court in S.H. Kress & Co. v. Burkes, 153 Fla. 868, 16 So.2d 106, that "this court, as many others, has rejected the contention that in order to show an injury by accident some traumatic injury must be shown or some definite incident at a definite time and place must be shown."
Turning now to the application of these principles to the instant case it unquestionably appears that there is competent, substantial evidence to show that the injury occurred in the course of employment. This element of proof is satisfied by the fact that the pain of the petitioner commenced while she was at work and by the testimony of the physician who subsequently examined her.
There was also testimony by the doctor that in his expert opinion the petitioner's herniated intervertebral disc was causally related to her activities while at work. This evidence was sufficient upon which to base a finding of causal relationship; that is, that the injury also arose out of the employment. As pointed out previously, the case of Gray v. Employers Mutual Liability Insurance Company, supra, states that "the claimant [is required] to make a showing of some event or circumstances connected with his work to which his injury can be directly attributed." (Emphasis supplied) Inasmuch as the plural word circumstances was used, it is clear that the court did not in that case mean that there must be any definite or particular circumstance to which the accident could be attributed, but only that the circumstances of the work were a causative factor of the injury. Thus we hold that the full commission erred in reversing the deputy's award on this point. See also Duff Hotel Company v. Ficara, 150 Fla. 442, 7 So.2d 790, wherein it is held that an unexpected injury received in the ordinary performance of a duty in a usual manner is an "injury by accident within the purview of Workmen's Compensation without the showing of anything fortuitous."
The remaining question with which we are confronted is whether the element of suddenness as required by the statute was established by competent, substantial evidence. In this regard, the following testimony of the claimant is pertinent:
"Q Now Mrs. Spivey before January of 1960 have you ever had any difficulty with your back of any nature?
"A No sir.
"Q When was the first time that you noticed anything concerning your back?
"A It was about 5:30 in the afternoon.
"Q Now do you remember what time of day you had gone to work?
"A Yes sir, 7:00 O'clock in the morning.

*312 "Q And do you remember what you had done on January the 25th before you noticed any pain or discomfort in your back?
"A I hadn't done anything but pack the fruit, and shoving the boxes you know.
"Q Do you recall on that particular day what fruit you had packed before you felt the pain and discomfort?
"A I was packing the size ninety sixes and grapefruit in big bruce boxes.
* * * * * *
"Q And you had just been packing grapefruit?
"A Yes sir.
"Q Now what size of boxes did you pack the grapefruit in?
"A In the large bruce boxes, about one and a half bushels to the box.
"Q Would you take those out of the bin and put them in the boxes?
"A Yes I would reach in the bin and take them and put them in the boxes.
"Q Now where would the box sit itself [sic], the grapefruit box?
"A Right there directly in front of me.
"Q And when you had completed packing the box what did you do with it?
"A I would shove it off to the left and shove it onto a moving chain.
"Q Now do you recall what you were doing when you first felt any pain or discomfort?
"A I was packing the big boxes of grapefruit the first time I had pain.
"Q Did anything unusual occur, did it come on suddenly or what is your recollection of that?
"A I just gradually started having shooting pains in my back and shortly after that it started going down into my legs.
"Q Do you know how long you had been packing the grapefruit boxes at that time?
"A Well we change, all during the day we change, maybe we will pack oranges for an hour or so and then go into grapefruit and just change back and forth from one to the other, and each thirty minutes we will change to a different bin and start packing them, whatever it is.
"Q Now you say that you noticed pain along about 5:00 or 5:30 in the afternoon?
"A Yes sir it was about 5:30. It was just before we got off for supper.
"Q Did you report that to anyone?
"A Immediately after supper I reported it to Louis McCall.
"Q Who is Louis McCall?
"A He was the packers' forman.
"Q What did you tell Mr. McCall?
"A I told him, I went to him and told him that evidently I had hurt my back lifting some of the boxes or something and it had gone to hurting me something awful and he said, `oh you are just tired we have had a hard day,' and he said, `you have done a lots of bags today and you are just tired from a rough day's work,' and he turned around and walked off.
"Q Did you finish working that day?
"A Yes sir I worked until 9:00 that night.

*313 "Q Now how did you feel when you went home that evening?
"A I just about couldn't get home.
"Q Well tell the Deputy about it.
"A I had pain all the way down the left side of my back and into my left leg.
"Q Now had you ever had that type pain or discomfort before?
"A No sir.
"Q All right what did you do the next morning?
"A I went back to work but I couldn't stay there.
"Q How long did you stay?
"A I went back at 7:00 and stayed until 9:00, and I packed about ten boxes or more and it hurt me so bad I couldn't do it."
After leaving work, petitioner then sought medical attention and was subsequently hospitalized for a herniated disc. The above quoted testimony was corroborated in part by the testimony of fellow employees to whom petitioner had complained concerning her back pain.
Concerning the petitioner's injury, her doctor testified in part as follows:
"Q Now, Doctor, assuming that Frankie Spivey had prior to January of this year noticed no particular back pain or back symptoms, assuming further that on January the 25th, 1960, while she was in the employ of the Battahlia [sic] Fruit Company as a fruit packer that she had worked commencing about 7:00 o'clock in the morning during the day packing boxes of fruit and bagging fruit, and somewhere in the latter part of the afternoon she had been packing grapefruit boxes which necessitated her pushing those boxes onto a roller with sort of a shoving movement, and assuming further that this patient never noticed any particular time or particular occasion when her back pain commenced, but shortly before supper prior to 6:00 o'clock that evening, she had worked during the day, she began noticing or started noticing back pain which increased in severity with the pain manifesting itself down one of the extremities, and that she continued to have pain that evening, the following morning she attempted to return to work but continued to have pain in her back at which time she quit trying to work and sought medical attention, and that her back remained in substantially the same condition as it was when she was seen by Dr. McCollough on January 29, 1960. Assuming all of those facts to be true, Doctor, do you have an opinion as to whether or not the ruptured disc which you ultimately found in her resulted from work done on January 25, 1960?
* * * * * *
"A I believe I can answer it in this way that in the absence of a definite history previous to her onset of complaints of a single severe trauma which might have precipitated this that it is reasonable to assume that the stress and strain of her ordinary work day as it was manifested at this disc level could have produced this ruptured disc.
"Q Do you have an opinion based upon a reasonable degree of medical certainty that in all probability that is what occurred?
"A I believe I can answer that yes."
The petitioner's testimony quoted above clearly places the occurrence of the injury within the confines of a narrow space of time. The back pain, which petitioner had never before experienced, commenced at about 5:30 in the afternoon. By 9:00 o'clock the next morning, it was so intense that she could not continue working. Moreover, the testimony of the doctor *314 provides an adequate evidentiary basis for concluding that the injury was brought about by the physical exertions connected with the work which petitioner was performing at the time she first began to feel the pain. This evidence, considered in its entirety, is sufficient to satisfy the statutory element of suddenness.
In the case of Meehan v. Crowder, 158 Fla. 361, 28 So.2d 435, the employee, previously in good health, was exposed for three days in the course of his work, to the poisonous fumes of mercury bichloride. A few months thereafter he was afflicted with nephritis, caused by absorption of the poison. The issue was whether there was an injury by accident. This court held that there was such an accident (which, by statutory definition, includes the element of suddenness[2]), and stated:
"It is strenuously urged that the element of time, place and cause must be clearly proven. Such is the rule. The evidence is abundantly clear that the cause of Crowder's ailment is mercury poisoning. Without question the poison was absorbed in the Link Trainer building on the dates of August 9, 10, and 11, 1943. This satisfies the rule. It is objected that Crowder is unable to identify some event which preceded the injury. The event here is the sudden entry of the poisonous fumes into Crowder's body. The injury followed. * * *
"Crowder was well immediately preceding the 9th, 10th and 11th of August. He was sick soon after. During those three days he was exposed to a highly dangerous solution which undoubtedly would cause the kind of illness of which he soon became a sufferer. The evidence shows a natural sequence of events based on facts from which liability can be inferred." (Emphasis supplied)
If, as the court held, the absorption of fumes over a three day period can be termed a "sudden" event then, it is clear that the injury in the instant case is likewise sufficiently ascertainable in point of time to satisfy the element of suddenness.
The medical evidence is, moreover, consistent with this view. Testifying concerning the rupture of an intervertebral disc, the doctor had this to say:
"Presumably this mechanism early in life, we will say perhaps at puberty begins the process of wear and tear on the disc, and as is well known often a relatively minor trauma of everyday life may actually be the factor precipitating the actual rupture.
"This is often seen in an individual previously healthy without back pain. He will be, for example, shoveling snow, or pushing his car, or as in this case lifting, straining daily, and finally something gives way, and the thing that gives way is the annular ligament of the intervertebral disc, and the rupture becomes complete and places the pressure upon the nerve root." (Emphasis supplied)
The concept of something finally giving way, as the doctor expressed it, clearly connotes suddenness. This testimony indicates that there was a "`breaking, herniating, or letting go, with an obvious sudden mechanical or structural change in the body'". Such a test for the existence of an accident is stated in 1 Larson, Workmen's Compensation Law, § 38.20 and was recognized by this court in the case of Martin Co. v. Carpenter, Fla., 132 So.2d 400. See also 1 Larson, Workmen's Compensation Law § 39.10 and Purity Biscuit Co. v. Industrial Commission, 115 Utah 1, 201 P.2d 961. The very word rupture, which means, in effect, a breaking apart, imports a certain element of suddenness. See Webster's Third New International Dictionary.
It appears, therefore, that every essential element of a compensable accident was *315 established by competent substantial evidence, and that the order of the deputy commissioner awarding compensation was correct. Accordingly, the order of the full Industrial Commission should be and it hereby is quashed and the cause is remanded with directions to reinstate the compensation order of the deputy commissioner.
It is so ordered.
TERRELL, Acting C.J., DREW and O'CONNELL, JJ., and SCOTT, Circuit Judge, concur.
NOTES
[1] At the time of the decision in the Gray case the statutory definition of accident as contained in Section 440.02(19), Florida Statutes, 1951, F.S.A., was "`accident shall mean only an unexpected or unusual event, happening suddenly'". The next session of the Legislature enacted Chapter 28238, Laws of 1953, which redefined "accident" to conform to the holding in the Gray case. The present statutory definition of accident is "an unexpected or unusual event or result, happening suddenly." Section 440.02(19) F.S.A.
[2] Section 440.02(19), F.S.A.