BARNS, PAUL D., Justice (Retired)
(dissenting).
Upon review of an award to the petitioner, Phyllis Beverly Richardson, under Workmen’s Compensation Law, the Florida Industrial Commission (with Commissioner Lightsey dissenting) reversed the award to the claimant, whereupon claimant sought review on certiorari by this court. I would grant certiorari and quash order of the Commission.
The Deputy’s Finding of Facts was fully accepted by the Commission, but reversed upon the ground that “the deputy erred as a matter of law in concluding that claimant sustained an injury by accident arising out of and in the course of her employment; furthermore, we do not believe, as a matter of law, that claimant suffered an occupational disease.”
The Findings of Fact by the Deputy were:
“2. The claimant is a white female, who has been employed by this employer for approximately two years prior to May 4, 1964. For approximately one year prior to May 4, 1964, her job entailed laboratory work where she operated a machine which had two vacuum pedals, each pedal being approximately four inches long. She operated these pedals with both of her feet. She would have to push the pedal forward or back, in a see-saw fashion, and would press down on her heel to turn the vacuum on and press down on her toe to turn the vacuum off. She performed this task approximately five hours each working day, and during her work she used her right foot more than she did her left foot. Although she had been performing this same task for approximately one year prior to May 4, 1964, she had never before had any difficulty or trouble with her ankles or feet.
“3. On about April 29, 1964 she went to see Dr. Charles Moore, with complaints of pain and swelling over the lateral aspect of her right foot. She had first noticed this problem while at work approximately one week prior to April 29, 1964. Upon resuming her work she discovered that the pain and swelling were becoming more severe. She became completely disabled from performing her work after May 4, 1964. She continued under the care and treatment of Dr. Moore. Following treatment of complete bed rest, elastic bandage support and ultra sound therapy, the pain continued to persist and Dr. Moore referred the claimant to Dr. Kenneth Peacock, an orthopedic specialist, for consultation. A diagnosis of capsulitis was made by Dr. Moore, and Dr. Peacock concurred.
“4. Dr. Peacock’s impression was that the claimant had, through the use of her ankle at work, irritated the anterior portion of the capsule of the ankle joint at its attachment to the tibia. When her foot failed to respond to hydracortisone shots, he placed it in a cast for about four weeks. The cast also failed to improve the condition and the claimant was admitted to the hospital under the 'care and treatment of Dr. Peacock. The condition, following her discharge from the hospital, slowly improved. By September 29, 1964 the claimant was able to resume her normal activities and the condition had cleared up. It was recommended by Dr. Peacock that she return to work to determine if the foot could withstand her work activity. As of the time of the hearing she had planned to resume her work with her present employer the following week.
*305 “5. I find that the condition of pain and swelling in the claimant’s right ankle, which was diagnosed as capsulitis, was caused by the repeated stretching of and stress to the right ankle while claimant was operating the vacuum pedal with her right foot, while in the course and scope of her employment with this employer. The claimant was totally disabled from May 4, 1964 to September 29, 1964. The repeated use of the vacuum pedal constituted a part of her employment which caused the claimant’s disability. I further find that the disease of capsulitis and the resulting disability was caused by an accident, as that term is defined under the Florida Workmen’s Compensation Act. There was no pre-existing disease or disability with reference to the claimant’s foot and ankle prior to the problem mentioned herein.
“6. I further find that the disease resulting in the claimant’s disability was an occupational disease as that term is defined in F.S.A. 440.151. The claimant’s condition resulted from the nature of her employment with this employer and was actually contracted while claimant was so engaged. I find that the occupation in which the claimant was engaged at the time the condition was caused, exposed the claimant to a particular hazard of such disease or condition that distinguishes it from the usual run of occupations. The disease that caused the claimant’s disability herein was due to causes and conditions which are characteristic of and peculiar to her particular employment and occupation with this employer and the condition or disease is one to which members of the general public are not ordinarily exposed. I therefore find claimant’s condition to be compensable.”
Section 440.02(19) F.S.A. provides that an “ 'Accident’ shall mean only an unexpected or unusual event or result, happening suddenly.” However, in 1945, Section 440.151, F.S.A. was added to the statutory law, which expanded the definition of “accident” to cover occupational diseases, as follows:
“440.151 Occupational Diseases—
“(1) (a) Where the employer and employee are subject to the provisions of the workmen’s compensation law, the disablement or death of an employee resulting from an occupational disease as hereinafter defined shall be treated as the happening of an injury by accident, notwithstanding any other provisions of this chapter, * * *. Provided, however, that in no case shall an employer be liable for compensation under the provisions of this section unless such disease has resulted from the nature of the employment in which the employee was engaged under such employer and was actually contracted while so engaged, meaning by ‘nature of the employment’ that to the occupation in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazard of such disease in such employment * * *.
“ its * *
“ (2) Whenever used in this section the term ‘occupational disease’ shall be construed to mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment, and to exclude all ordinary diseases of life to which the general public are exposed.”
The recent decision of the Supreme Court of Florida in the case of Zerwal v. Caribbean Modes, Inc., Fla.1965, 170 So.2d 840, clearly indicated that the Deputy’s order should be reinstated. In this case, the court used the following language:
“As indicated in the previous opinion of this Court, the doctrine of current decisions has been clear that an internal failure brought about by exertion in the performance of the regular employment may be found to be an injury by accident *306 without the necessity of showing that such injury was preceded by any unusual external incident. The testimony as to claimant’s complaints of pain beginning at the time in question, unaccompanied by report of an 'accident’ either on the job or in medical histories, is therefore quite consistent with a conclusion of compensa-ble origin for his injury. * * * ”
In a prior decision in the Zerwal case, supra, (145 So.2d 878, Fla.1962) the court specifically pointed out that the doctrine which required the claimant to prove an incident which amounted to an accident before he could recover was materially modified by the cases of Spivey v. Battaglia Fruit Company, Fla.1962, 138 So.2d 308, and Victor Wine & Liquor, Inc. v. Beasley, Fla.1962, 141 So.2d 581.
In the Spivey v. Battaglia Fruit Company case, supra, the claimant gradually started having pains in her back and legs and did not recall the exact moment when the pains began, but merely that they began while she was packing grapefruit. The medical experts in that case indicated, as they did in the case before us, that they were able to determine only when the injury manifested itself.
In the Victor Wine & Liquor, Inc. v. Beasley, case, supra, compensation was awarded the claimant, who suffered a coronary occlusion, on the grounds that the claimant was subject to over-exertion. The court in that case specifically considered the case of Firestone Tire & Rubber Co. v. Hudson, Fla.App.1959, 112 So.2d 29, relied on by the order of the Full Commission in this case. In reaching its decision on rehearing, the court used the following language :
“It is also settled law in this state that a disability which results from some exposure peculiar to and constituting a hazard of the employment, operating upon the physical condition of the employee at the time of such exposure, is a compensa-ble injury ‘by accident’ within the meaning of the Act, even though there is no literal ‘accident’ such as a slip or fall,” (141 So.2d 588.)
In I Larson, Workmen’s Compensation Law, Page 563, § 38.82, it is pointed out that the concept of time definiteness can be thought of as applying to either the cause or the result. He goes on to point out that most jurisdictions have “at some time awarded compensation for conditions that have developed, not instantaneously, but gradually over periods ranging from a few ours to several decades, culminating in disability from” numerous diseases and ailments.
With respect to the Deputy’s finding that the claimant sustained an occupational disease, reference should be made to § 440.-151(2), Florida Statutes, F.S.A., which defines occupational disease as a “disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment, and to exclude all ordinary diseases of life to which the general public is exposed,” which disease is made "an injury by accidenf’ by § 440.151(1) (a), F.S.A.
For the foregoing reasons, I would quash the order of reversal by the Commission.