431 P.2d 798

Daniel R. MELLEN, Plaintiff,

v.

INDUSTRIAL COMMISSION of Utah, Utah Richardson Roofing and the State Insurance Fund, Defendants.

No. 10795.

Supreme Court of Utah.

Aug. 24, 1967.

Rawlings, Wallace, Roberts & Black, John L. Black, Salt Lake City, for plaintiff.

Robert D. Moore, Salt Lake City, for defendants.

HENRIOD, Justice:

Review of a denial of award. Affirmed.

Mellen, a roofer for 18 years, at age 55, while working alone on a flattop roof, after carrying materials and hammering cement nails for four hours, with a six-pound hammer, suffered severe chest pains about an hour before noon. He rested in the shade for about 15 minutes, ate lunch, resumed work without further incident until after 3:00 p. m., when he left and drove to his shop or office, and then, driving home experienced lesser chest pains. After arriving

home he sat in an easy chair for a couple of hours, without incident, after which he sat down to eat dinner, at which time he suffered severe pain, requiring that immediately he be hospitalized for about three and one-half weeks, the first two days of which he remembered little or nothing.

He had suffered some minor physical difficulties in the past which have no significance here. However, about three or four days before his chest pain on the roof, he had experienced less pronounced pains both on and off the roof.

He filed for compensation. His personal physician advised against further physical roof work.

Upon subsequent investigation, he signed a report stating that he was doing the usual work which he had done in the roofing business for many years.

Although he had said in his signed statement that he did nothing unusual relating to his work, on formal hearing he testified somewhat inconsistently that, with financial problems, etc., he overexerted himself.

The Commission had referred the matter to a three-man panel of medical experts, all of whom concluded (one of whom being subjected to rather extensive cross-examination) that the pain experienced on the roof was a natural and ultimate result of a degenerative heart condition that could have occurred while the man was asleep or otherwise, on or off the job. The plaintiff's personal physician thought, with some qualification, that the onset was due to the extra exertion on the roof, while the three panel doctors admitted it *could have been a factor* in the pain, in hastening what was inevitable anyway,—and which could have occurred at any time, anywhere,—even while in bed asleep.

■ The only point made on appeal is that the denial of the award was contrary to the undisputed evidence. Hardly can we agree with this conclusion, since the record does not seem to reflect it. The three-panel experts were solid in saying the roof onset was only symptomatic of a natural degenerative condition, precipitable under any given set of circumstances, including sleep. The Commission is the fact-finder in cases like this and in its conclusion in such a case, we cannot say that it must reject the panel's canvass of the facts in favor of the qualified opinion of plaintiff's personal physician.

Plaintiff relies heavily and only on three cases.[1]

As to the Baker case, it is inapropos. That case, in italics, said, "We think the critical question here is whether the Commission arbitrarily can discount *all* com-

---

1. Baker v. Ind. Comm., 17 Utah 2d 141, 405 P.2d 613 (1965); Jones v. Calif. Packing Corp., 121 Utah 612, 244 P.2d 640 (1952); Purity Biscuit Co. v. Ind. Comm., 115 Utah 1, 201 P.2d 961 (1949).

petent, *uncontradicted* evidence. We think it can't, but did so here, calling for a reversal. *This is the law of the case here, nothing else."* Obviously it is not pertinent, where there was no controversion on the facts adduced by respectable testimony.

As to the Jones case, the physical facts are so far afield from those here as to be unworthy of analogy.

The facts in the Jones case (a 3–2 decision, with a strong dissenting opinion by Mr. Chief Justice Wolfe, a well-known scholar in the Workmen's Compensation field) do not recommend themselves to fit those in the present case, and in that very close case, where the plaintiff points out that the Commission was overruled, the main opinion pointed out significantly that there was no competent evidence to support the Commission, as was the situation in the Baker case,—but not the case here.

As to the Purity Biscuit case, it is interesting to note that it was another 3 to 2 decision, which, decided in 1949, 18 years ago, in a long difficult to understand opinion, has never been cited by this court or any other court to support the law of that case. It is interesting to note that Mr. Justice Wolfe wrote something entitled a concurring opinion which made sounds almost like a dissenting opinion when he said:

> From time to time we shall encounter difficulty in determining whether the commission acted unreasonably or arbi-

trarily in those doubtful cases above mentioned. It is not so much the principles laid down in the prevailing opinion as it is the nature of the proof with which I am concerned. In this type of case we are dealing with situations involving death or disability which situations may, due to a functional failure, occur by reason of the work or may be purely coincidental with it. Where the death or disability occurs under such circumstances as to present prima facie doubt as whether it was caused by exertion incidental to the work, or an event which occurred only in the duration of the work and in regard to which the work furnished no material or efficient concurring or cooperating cause, then, before a favorable award is made, it should appear by clear and convincing evidence that the exertion in pursuance of the work was at least an efficient cooperating cause of the disability or death. The commission should have clear and convincing proof that the exertion done as a part of the work, whether ordinary or extraordinary, was a factor which materially contributed to or caused the death or disability. Unless the commission requires clear and convincing proof that the disability was employment connected, that is, materially contributed to by the work performed, we may open wide the door to compensating nonemployment connected death or disabilities which the act was not intended to

cover. This rule I suppose is primarily one of guidance for the commission. It would seem that unless no reasonable mind could say that the evidence was clear and convincing, the commission could not be overturned for arbitrariness.

Mr. Justice Wolfe concurred on account of conflicting evidence which the Commission resolved in favor of the applicant.

The Purity Biscuit case certainly needs a healthy reappraisement.

The author prefers to accept the more realistic pronouncement of Carling v. Industrial Commission,[2] where a man having a progressive degenerative functional hearing problem was denied an award as not being precipitated by noise in the nature of an "accident" under the Workmen's Compensation concept of that term, when we said:

Inasmuch as there is a reasonable basis in the evidence to support the Commission's conclusion that the plaintiff's loss of hearing did not result from a single incident, nor from an "accident" arising out of or in the course of his employment, its order cannot be said to be capricious or arbitrary.

And further, we refer to the enunciation in Burton v. Industrial Commission,[3] where, when the heirs of a deliverer of beer were denied compensation when, after delivery of heavy cargoes of beer, he suffered a pain

diagnosed as coronary thrombosis, on controverted testimony, we said:

In order to reverse the finding and order made the plaintiff must show that there is such credible uncontradicted evidence in her favor that the Commission's refusal to so find was capricious and arbitrary. In support of her position she urges the admitted principle that the Commission should indulge doubts in favor of coverage of the employee to effectuate the purposes of the act. She relies on the circumstances of the death described above, coupled with the testimony of the family physician, Dr. Clawson. In response to the question as to whether the deceased's exertion in lifting and delivering the cases of beer was a contributing cause to the occurrence to Mr. Burton's heart attack and his death, the doctor answered that, "It could be a factor."

As opposed to the evidence upon which plaintiff relied the Commission had before it the opinions of three members of the medical panel, together with the testimony of one of them, Dr. L. E. Viko, a well-known heart specialist. The substance of their opinions was that Mr. Burton's coronary thrombosis with myocardial infarction was not caused by the exertion of his work on that morning. In its decision the Commission recited, "We chose to believe the testimony of Dr. L. E. Viko and the panel report."

2. 16 Utah 2d 260, 399 P.2d 202 (1965).

3. 13 Utah 2d 353, 374 P.2d 439 (1962).

Assuming without deciding that the plaintiff's evidence if uncontradicted would be sufficient to sustain a finding in her favor, it is indisputable that the testimony just referred to is sufficient to sustain a finding to the contrary. There being no basis upon which this court could say that the Commission acted capriciously, arbitrarily or unreasonably in denying the application, its order is affirmed.

The most recent pronouncement of our conclusions that because a man happens to work and suffers from a natural, progressive disease, a disability is not compensable if it results from something not the result of an industrial accident incident to his employment, and its industrial hazards is found in the recent case of Garner v. Hecla Mining Company, 431 P.2d 794, this court, where, in a case involving a lung injury allegedly caused by working in uranium mines, we said:

> The fallacy which underlies plaintiffs' attack on the Commission's finding is that they improperly attempt to focus consideration of the issues exclusively upon their own view of the evidence and theories of the case. While some aspects of the statistical data and medical theories harmonize with their contention, others fail to do so. * * * Consistent with the foregoing and corroborating the existence of unknown factors and uncertainty as to causation, is the report of the medical panel to which this case was referred for examination: "We cannot confirm that the lung carcinoma was caused by exposure to uranium mining occupation." There is thus a reasonable basis in the evidence for the refusal of the Commission to find in accordance with the plaintiffs' contention. Upon the principles stated above it is our duty to affirm the decision.

■ Upon familiar principles of appellate review, we cannot say that in the instant case the Commission's ruling was capricious, arbitrary, or based on no competent evidence.

The plaintiff's main theme is that the Commission adopted the panel report, which, it is urged, was a misstatement of the law. Counsel says: "The denial of plaintiff's claim by the Medical Panel is based on incorrect interpretations of law by the Panel and is contrary to the undisputed evidence."

■ In the first place, the panel did not nor could not deny the claim,—the function of the Commission.

■ The other answer to this contention is that in giving the panel the duty of analyzing this case, the Commission in a letter appointing the panel carefully said: "The Panel has no jurisdiction to make a finding on the occurrence of an accident. Therefore, in the Panel Report just preced-

ing the *findings and conclusions*, the following language should be used: 'Assuming but not deciding that applicant had an accident as alleged the Panel finds, etc.' It is thus obvious that the Commission, in adopting the report, did not adopt any conclusions of law of the Panel if there were any, but only the medical facts and conclusions drawn."

CALLISTER, TUCKETT and EL-LETT, JJ., concur.

CROCKETT, C. J., I concur except I reserve comment on the Purity Biscuit case.