Robert A. ALLEN, Plaintiff,

v.

INDUSTRIAL COMMISSION, Board of Review, Jer Ken, Inc., State Insurance Fund and Second Injury Fund, Defendants.

No. 20026.

Supreme Court of Utah.

Nov. 14, 1986.

Michael E. Bulson, Ogden, for plaintiff.

Gilbert Martinez, Salt Lake City, for Second Injury.

Fred R. Silvester, James R. Black, Salt Lake City, for State Ins. Fund.

DURHAM, Justice:

Claimant Robert A. Allen seeks a review from the Industrial Commission's denial of his motion for review of an administrative law judge order denying him compensation for a back injury sustained at work. For the reasons stated below, we reverse and remand.

■ On November 23, 1982, the claimant, aged 36, was employed as night manager of Kent's Foods. The claimant testified to the following version of events at a hearing before an administrative law judge. The claimant was working in a confined cooler in the store stacking crates, containing four to six gallons [1] of milk, from the floor onto a cooler shelf. While lifting one crate to about chest level, he suddenly felt a sharp pain in his lower back. He immediately set down the crate and asked another employee to continue stocking the shelves. The claimant completed the one-half hour remaining in his shift doing desk work. That night the pain increased, and by morning his left leg felt numb. Four or five days later, he saw Dr. Ivan Wright about his back problem. Initial doctor visits during December were followed through with the prescribed treat-

ment of bed rest and medication. A myelogram finally revealed a herniated disc, and the claimant spent ten days in traction in the hospital in early January. He did not return to work.

The claimant also testified he had a history of prior back injuries, including a fall from a telephone pole at age fourteen which required him to wear a back brace for several months, a back injury in 1977 while lifting sand bags for the Logan School District, and another fall while working for that employer when he slipped on a slick concrete ramp and broke his coccyx. None of the prior injuries resulted in prolonged absences from work.

The testimony from other sources varied slightly from the report given by the claimant. The employer's report of injury describes the accident as "picking up freight and stocking it on shelves, lifting boxes and stacking them from truck." No specific event was mentioned in the employer's report. The medical records of treating physicians described the claimant's previous injuries, but omitted any reference to a specific incident in the cooler. Dr. Hannan, who examined the claimant on December 31, 1982, wrote, "He does not remember any distinct episode as having precipitated his current problem, however." And in a letter from Dr. Bryner to Dr. Wright dated January 13, 1983, the claimant's history was related as follows: "About six weeks ago, however, he was lifting material at work, and recalls no specific injury or stress but developed discomfort in his left groin area which ultimately extended into his big toe."

The administrative law judge found that the claimant's injury to his back on November 23, 1982, was not "an injury by accident arising out of or in the course of employment." It is apparent that the administrative law judge, using a specific episode analysis, concluded there was no "accident" because there was no identifiable

---

1. We take judicial notice that liquid milk weighs about the same as liquid water or approximately 8⅓ pounds per gallon. Thus, four gallons of milk weigh about 33 pounds without the con-

tainers and crate. Six gallons of milk weigh approximately 50 pounds without the containers and crate.

event that caused the injury and because lifting the crates of milk was a routine and commonplace exertion expected of the job. The administrative law judge analogized the facts of this case to *Farmer's Grain Cooperative v. Mason*, 606 P.2d 237 (Utah 1980), where a gradually developed back injury was held to be not compensable where the condition worsened without the intervention of any external occurrence or trauma.

The sole issue on appeal is whether the claimant, who had suffered preexisting back problems and was injured as the result of an exertion usual and typical for his job, was injured "by accident arising out of or in the course of employment" as required by the Workers' Compensation Act, U.C.A., 1953, § 35-1-45 (Supp.1986). That Act, in pertinent part, provides:

> Every employee ... who is injured ... by accident arising out of or in the course of his employment ... shall be paid compensation for loss sustained on account of the injury....

*Id.* This statute creates two prerequisites for a finding of a compensable injury. First, the injury must be "by accident." Second, the language "arising out of or in the course of employment" requires that there be a causal connection between the injury and the employment. *See Pittsburgh Testing Laboratory v. Keller*, 657 P.2d 1367, 1370 (Utah 1983). Prior decisions by this Court have often failed to distinguish the analysis of the accident question from the discussion of causation elements.[2] As a result, this Court and the Commission are faced with confusing and often inconsistent precedent. For this rea-

son we now undertake a fresh look at the policy and historical background of the workers' compensation statute in an attempt to provide a clear and workable rule for future application by the Commission.

## I.

The term "by accident" is not defined in the workers' compensation statutes. The most frequently referenced authority for the definition of "by accident" is the case of *Carling v. Industrial Commission*, 16 Utah 2d 260, 399 P.2d 202 (1965), where the term was defined as follows:

> [An accident] connotes an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events.... [T]his is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly fall within the definition of an accident as just stated above. However, such an occurrence must be distinguished from gradually developing conditions which are classified as occupational diseases....

*Id.* at 261-62, 399 P.2d at 203 (citing *Jones v. California Packing Corp.*, 121 Utah 612, 616, 244 P.2d 640, 642 (1952), and *Purity Biscuit Co. v. Industrial Commission*, 115 Utah 1, 201 P.2d 961 (1949)). Some confusion has developed as to whether "by accident" requires proof of an unusual event. This issue frequently arises when the employee suffers an internal failure[3] brought about by exertions in the

---

**2.** We note that many of our prior opinions so intermingled the causation and accident analyses that it is impossible to segregate them and determine the basis for the Court's decision. For example, the opinion in *Sabo's Elec. Serv. v. Sabo*, 642 P.2d 722 (Utah 1982), mixes the accident and causation elements in the following language: "It appears to be mere coincidence that defendant's injury ... occurred at work. Defendant bears the burden of showing otherwise. Proof of the causal relationship of duties of employment to unexpected injury is simply lacking.... [T]he Commission's conclusion that an accident occurred is without any sub-

stantive support in the record." *Id.* at 726 (footnotes omitted). *See also Church of Jesus Christ of Latter-Day Saints v. Industrial Comm'n*, 590 P.2d 328, 329-30 (Utah 1979); *Pintar v. Industrial Comm'n*, 14 Utah 2d 276, 382 P.2d 414 (1963). For an example of an opinion which *does* separate the accident and causation analysis, see *Church of Jesus Christ of Latter-Day Saints v. Industrial Comm'n*, 590 P.2d 328, 330-31 (Utah 1979) (Wilkins, J., dissenting).

**3.** An "internal failure" refers to a category of injuries that arise from general organ or structural failure brought about by an exertion in the

workplace. It is clear, however, that our cases have defined "by accident" to include internal failures resulting from both usual and unusual exertions. *See Schmidt v. Industrial Commission*, 617 P.2d 693, 695 (Utah 1980).

This Court first discussed the term "by accident" in *Tintic Milling Co. v. Industrial Commission*, 60 Utah 14, 206 P. 278 (1922), where an accident was said to be "something out of the ordinary, unexpected, and definitely located as to time and place." 60 Utah at 22, 206 P. at 281. This definition was used to distinguish injuries which occurred gradually and were covered under statutory provisions for occupational disease. *Id.* The Court in *Tintic Milling* also acknowledged that where the claimant suffers an internal failure the "unexpected result" rule of the seminal English case of *Fenton v. Thorley*, [1903] A.C. 443, 72 L.J.K. 789, 5 W.C.C. 1, is appropriate. The Court in *Tintic Milling* observed:

> "Since the case of *Fenton v. Thorley*, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected.... It is enough that the causes, themselves known and *usual*, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected, and so, if received on a single occasion, occurs 'by accident,' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

60 Utah at 26, 206 P. at 282 (quoting Bohlen, *A Problem in The Drafting of Workmen's Compensation Acts*, 25 Harv.L.Rev. 328, 340 (1912) (emphasis added)). Accordingly, the Court in *Tintic* affirmed a finding that the employee, whose previous respiratory problems were aggravated by entering a roasting flue, had suffered a compensable accident.

After *Tintic Milling*, the Court temporarily rejected the "unexpected result" definition of *Fenton v. Thorley* in internal failure cases on the ground that the definition of "by accident" required an unusual occurrence or exertion. In *Bamberger v. Industrial Commission*, 66 Utah 203, 240 P. 1103 (1925), the Court denied compensation to a worker who unexpectedly suffered a heart attack while manually unloading a railroad car of coal on the ground that no overexertion occurred during the work. 66 Utah at 208, 240 P. at 1104. That decision was apparently overruled, however, when the Court embraced the "unexpected result" rule and awarded compensation to an employee who suffered a heart attack after overexertions while routinely cleaning the weirs to a city reservoir. *Hammond v. Industrial Commission*, 84 Utah 67, 87, 34 P.2d 687, 695 (1934) (Moffat, J., concurring). *Hammond* was followed in *Columbia Steel Co. v. Industrial Commission*, 92 Utah 72, 66 P.2d 124 (1937), where a unanimous Court held that the employee, who had suffered a ruptured aorta from riding a caterpillar tractor over rough ground, suffered an injury "by accident" since the result was "an unusual, unforeseen, and unexpected event or occurrence" and definite as to time and place. *Id.* at 92, 66 P.2d at 134. And, in *Thomas D. Dee Memorial Hospital Ass'n. v. Industrial Commission*, 104 Utah 61, 138 P.2d 233 (1943), the Court sustained an award of benefits to a claimant who had suffered from heart disease and experienced a heart attack shortly after moving 52 boxes weighing 50 to 100 pounds and 28 sacks of fire clay—work that was unusually heavy and greatly in excess of his ordinary duties. The Court pointed out, in dicta, that the English common law would have awarded compensation even if the exertions were ordinary and usually required as part of the job. 104 Utah at 67-71, 138 P.2d at 235-39. Quoting from the Bohlen article, *supra*, the Court observed:

---

workplace. Internal failure claims evaluated by this Court include heart attacks, hernias, and back injuries. *See generally*, Note, *Schmidt v. Industrial Commission and Injury Compensability under Utah Worker's Compensation Law: A Just Result or Just Another "Living Corpse"?*, 1981 Utah L.Rev. 393.

"[N]othing more is required than that the harm that the plaintiff has sustained shall be unexpected.... The element of unexpectedness inherent in the word 'accident' is sufficiently supplied ... if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it."

104 Utah at 70, 138 P.2d at 237.

Six years later in *Purity Biscuit Co. v. Industrial Commission*, 115 Utah 1, 201 P.2d 961 (1949), this Court explicitly adopted the English rule for the definition of an accident and awarded benefits to a claimant who unexpectedly injured his back while stepping on the brake pedal of a delivery truck—a usual and ordinary activity. *See* 115 Utah 14–20, 201 P.2d 967–70. After summarizing early Utah cases interpreting "by accident" the Court concluded that "since 1922 this court has uniformly held that an unexpected internal failure meets the requirements of ["by accident"]

and the legislature by failing to amend has acquiesced in that construction." 115 Utah at 15, 201 P.2d at 968.

The holding of *Purity Biscuit* also squarely embraced the concept that an ordinary or usual exertion that results in an unexpected injury is compensable. *See* 115 Utah at 18–19, 201 P. at 969–70. After carefully considering the legislative purpose of the workers' compensation statute, prior precedent, and public policy, the Court rejected the requirement that proof of an unusual activity or exertion be a required element of the "by accident" definition. 115 Utah at 14–20, 201 P.2d at 967–70. The Court concluded that "there is nothing in the statute which would justify a holding that an injury is compensable where overexertion is shown but is not compensable where only ordinary exertion is shown, provided that in both cases it is shown that the exertion causes the injury." [4] 115 Utah at 19, 201 P.2d at 970.

**4.** The holding of *Purity Biscuit* was questioned in *Mellen v. Industrial Comm'n*, 19 Utah 2d 373, 431 P.2d 798 (1967), where the opinion erroneously stated that *Purity Biscuit* "has never been cited by this or any other court to support the law of that case." 19 Utah 2d at 375, 431 P.2d at 799. In fact, by 1967 *Purity Biscuit* had been relied upon in decisions from the courts of nine other states. *Alabama Textiles Prods. Corp. v. Grantham*, 263 Ala. 179, 183–84, 82 So.2d 204, 208 (1955) (finding of unusual strain or exertion unnecessary to support conclusion that claimant suffered injury by accident); *Bryant Stave & Heading Co. v. White*, 227 Ark. 147, 151–52, 296 S.W.2d 436, 439–40 (1956) (*Purity Biscuit* cited as stating majority position that usual exertion causing an internal failure may be by accident); *Argonaut Ins. Co. v. Industrial Accident Comm'n*, 231 Cal.App.2d 111, 41 Cal.Rptr. 628, 635 (1964) (relying upon causation rule of *Purity Biscuit*); *Spivey v. Battaglia Fruit Co.*, 138 So.2d 308, 314 (Fla.1962) (back herniation from rupture of intervertebral disc satisfies statutory requirement of suddenness); *Roman v. Minneapolis St. Ry.*, 268 Minn. 367, 380, 129 N.W.2d 550, 559 (1964) (calls *Purity Biscuit* "a well-considered workmen's compensation case" that supported an award where many factors led to the disability); *Murphy v. Anaconda Co.*, 133 Mont. 198, 208, 321 P.2d 1094, 1100 (1958) (quoting favorably the reliance on *Purity Biscuit* in *Bryant Stave*, 227 Ark. at 151–52, 296 S.W.2d at 439–40, and holding that a usual exertion may lead to a compensable injury where the causal relationship is established); *Neylon v. Ford Motor Co.*, 10 N.J. 325, 327–28, 91 A.2d 569, 570 (1952) (*Pu-*

*rity Biscuit* cited in support of rule that internal failure from ordinary or usual exertion is an "injury by accident"); *Olson v. State Indust. Accident Comm'n*, 222 Or. 407, 416–17, 352 P.2d 1096, 1101 (1960) (O'Connell, J., specially concurring) (dissent to *Purity Biscuit* quoted); *Cooper v. Vinatieri*, 73 S.D. 418, 424, 43 N.W.2d 747, 750–51 (1950) (*Purity Biscuit* cited as an example of the divergent viewpoints for defining a compensable accident).

In addition, the decision in *Purity Biscuit* was relied upon by the majority in three Utah cases. *See Jones v. California Packing Co.*, 121 Utah 612, 244 P.2d 640, 642; *Carling v. Industrial Commission*, 16 Utah 2d 260, 399 P.2d 202; *Powers v. Industrial Commission*, 19 Utah 2d 140, 427 P.2d 740. Despite this support for the decision in *Purity Biscuit*, the Court in *Mellen* concluded without further discussion that "[t]he Purity Biscuit decision certainly needs a healthy reappraisement." 19 Utah 2d at 376, 431 P.2d at 800. Two years later in *Redman Warehousing Corp. v. Industrial Comm'n*, 22 Utah 2d 398, 454 P.2d 283 (1969), the Court again questioned the *Purity Biscuit* decision in a superficial analysis that concluded: "Purity enjoys the unique and doubtful distinction of being a living corpse." 22 Utah 2d at 403, 454 P.2d at 286. After considering those cases from Utah and other jurisdictions that have relied on *Purity Biscuit*, we now cannot agree that it was a "living corpse." Moreover, even if *Purity Biscuit* lay dormant, it was resurrected by *Schmidt v. Industrial Commission*, 617 P.2d 693, 695 (Utah 1980).

Since *Purity Biscuit,* numerous cases have held that an internal injury may be compensable if it results from either a usual or unusual exertion in the course of employment. *See, e.g., Champion Home Builders v. Industrial Commission,* 703 P.2d 306 (Utah 1985) (perforated ulcer caused by lifting an unusually heavy beam); *Pittsburg Testing Laboratories v. Keller,* 657 P.2d at 1367 (unforeseen and unanticipated heart attack resulting from exertion while inspecting roof structure); *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888 (Utah 1981) (back injury resulting from shoveling coal compensable despite usualness of activity and presence of preexisting conditions); *Painter Motor v. Ostler,* 617 P.2d 975 (Utah 1980) (back injury resulting from moving heavy boxes and installing electrical equipment); *Schmidt v. Industrial Commission,* 617 P.2d 693 (Utah 1980) (back injury resulting from carrying steel plates compensable despite prior history of back disorders and ordinary activity); *United States Steel Corp. v. Draper,* 613 P.2d 508 (Utah 1980) (heart attack resulting from exertion while rushing to drowning accident); *IGA Food Fair v. Martin,* 584 P.2d 828 (Utah 1978) (heart attack resulting from heavy lifting); *Nuzum v. Roosendahl Construction & Mining Corp.,* 565 P.2d 1144 (Utah 1977) (truck driver suffered heart attack after repeatedly climbing long steps); *Residential & Commercial Construction Co. v. Industrial Commission,* 529 P.2d 427 (Utah 1974) (back injury resulting from moving lumber); *Powers v. Industrial Commission,* 19 Utah 2d 140, 427 P.2d 740 (1967) (heart distress occurring over a period of several months compensable despite preexisting conditions); *Baker v. Industrial Commission,* 17 Utah 2d 141, 405 P.2d 613 (1965) (back injury resulting from filing papers in lower drawer compensable).

Despite the strong precedential support for applying the "unexpected result" rule of *Purity Biscuit* to internal failure cases, a separate line of opposing authority has developed which requires overexertion or an unusual event to prove an injury occurred "by accident." Typically, these cases denied compensation because the claimants' ordinary work duties precipitated the injury. Consequently, there were no events or exertions that were unusual or extraordinary to qualify as "by accident." *See, e.g., Billings Computer Corp. v. Tarango,* 674 P.2d 104 (Utah 1983) (compensation for knee injury denied where circumstances precipitating the injury were commonplace and usual); *Sabo's Electronic Service v. Sabo,* 642 P.2d 722 (Utah 1982) (back injury from loading box of twelve radios into van not compensable); *Farmer's Grain Cooperative v. Mason,* 606 P.2d 237 (Utah 1980) (back injury to claimant with preexisting condition resulting from delivery of 100–pound sacks not compensable since the activity was not unusual or unexpected); *Church of Jesus Christ of Latter-Day Saints v. Industrial Commission,* 590 P.2d 328 (Utah 1979) (back injury suffered by janitor upon standing up not compensable without evidence that activities were unusual); *Redman Warehousing Corp. v. Industrial Commission,* 22 Utah 2d 398, 454 P.2d 283 (1969) (back injury precipitated by sitting and driving a moving van not compensable without proof of an unusual event). These cases will not be collectively referred to as the *Redman* line of cases.

We are now convinced that the *Redman* line of cases has misconstrued the historical and logical definition of "by accident." The *Redman* line of cases relied on the following abridged version of the definition of an accident found in *Carling v. Industrial Commission:* "[Accident] connotes an unanticipated, unintended occurrence *different from what would normally be expected to occur in the usual course of events.*" 16 Utah at 261, 399 P.2d at 203 (emphasis added; footnotes omitted). In *Redman,* the highlighted phrase was interpreted to require an unusual event before there can be an accident. This interpretation misconstrues the *Carling* decision itself and is inconsistent with the English definition of "by accident" used by this Court since 1922. The key requirement of an accident under the *Car-*

*ling* decision, as well as prior decisions, was that the occurrence be unanticipated, unplanned and unintended. The highlighted phrase emphasized that where either the cause of the injury *or* the result of an exertion was different from what would normally be expected to occur, the occurrence was unplanned, unforeseen, unintended and therefore "by accident."

Policy considerations also militate in favor of rejecting the notion that the phrase "by accident" requires an unusual event. There is nothing in the term "accident" that suggests that only that which is unusual is accidental. *See Robertson v. Industrial Commission*, 109 Utah at 33, 40, 163 P.2d at 335, 338 (Wade, J., concurring; Wolfe, J., dissenting). An accident does not occur simply because a worker is injured during an unusual activity. This argument is illustrated by Professor Larson in his treatise on workmen's compensation with the following example:

> If an employee intentionally and knowingly undertakes to lift an unusual load, the cause (i.e., the lifting) is no more accidental than if he deliberately lifted a normal load. Or if a gardener deliberately continues to mow the lawn in the rain, a passerby observing him would not say that he was undergoing an accident merely because it is unusual to mow lawns in the rain.

Larson, *Workmen's Compensation* § 38.-62, at 7–162 (1986) (footnotes omitted).

Larson also criticizes the usual-unusual distinction as being unworkable in practice. Realistically, it is impossible to determine what are the usual and normal requirements of a job. People work in good weather and bad, lift heavy items as well as light ones, and work for long hours as well as short ones. None of these activities may be unusual or unexpected. *Id.* § 38.63 at 7–164 to –168.

The unworkability of the usual-unusual event requirement is further evidenced by comparing seemingly irreconcilable decisions by this Court. *Compare Kaiser Steel v. Monfredi*, 631 P.2d 888 (back injury to miner with previous back problems held to be a compensable accident despite being caused by shoveling coal in the usual course of employment), *with Farmer's Grain Cooperative v. Mason*, 606 P.2d 237 (no accident where worker with previous back problems sustained back injury while delivering 100–pound bags of whey); *compare Baker v. Industrial Commission*, 17 Utah 2d 141, 405 P.2d 613 (compensable accident for back injury resulting from filing paper in lower drawer) *with Billings Computer Corp. v. Tarango*, 674 P.2d 104 (no accident where worker sustained knee injury resulting from bending to pick up small parts).

We believe that the Court's real concern in the *Redman* line of cases was the presence or absence of *proof of causation* to support an award of compensation. *See generally Church of Jesus Christ of Latter-Day Saints*, 590 P.2d at 332 (Wilkins, J., dissenting). As will be discussed in the next section, the Court has developed two parallel lines of authority on the causation issue, one of which requires an unusual event in order to meet the statutory causation requirement. Although proof of an unusual event may be helpful in determining causation, it is not required as an element of "by accident" in section 35–1–45. "[T]he basic and indispensable ingredient of 'accident' is unexpectedness." *Schmidt*, 617 P.2d at 696 (Wilkins, J., concurring) (quoting 1B Larson, *Workmen's Compensation*, at 7–5 (1980). We therefore reaffirm those cases which hold that an accident is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury. We thus necessarily abandon the analysis of "by accident" in the *Redman* line of cases which predicates the "accident" determination upon the occurrence of an unusual event.

## II.

The second element of a compensable accident requires proof of a causal connection between the injury and the worker's employment duties. *Pittsburg Testing Laboratory v. Keller*, 657 P.2d 1367, 1370 (Utah 1983). In workers' compensation

cases involving internal failures, the key issue is usually one of causation. Ordinarily, causation is proved by the production and interpretation of medical evidence either alone or together with other evidence. *See Keller,* 657 P.2d at 1367, 1370; *Schmidt v. Industrial Commission,* 617 P.2d 693, 695 (Utah 1980). Because of the difficulties of diagnosis of internal failures and because of the possibility that a preexisting condition may have contributed to the injury, special causation rules have been developed for internal failure cases. *See* Larson, *supra,* § 38.81, at 7–269; *Purity Biscuit Co. v. Industrial Commission,* 115 Utah 1, 20–21, 201 P.2d 970–71 (Wolfe, J., concurring specially).

This Court initially responded to the problem of causation in internal failure cases by suggesting that the Commission use a clear and convincing evidence standard when an internal failure was caused by an exertion in the workplace.[5] *See Thomas D. Dee Memorial Hospital Ass'n. v. Industrial Commission,* 104 Utah 61, 74, 138 P.2d 233, 238 (1943). The clear and convincing evidence standard was rejected, however, in *Lipman v. Industrial Commission,* 592 P.2d 616, 618 (Utah 1979), with the rationale that such a standard would make workers' compensation benefits nearly impossible to recover where the deceased suffered from a preexisting condition. Accordingly, the standard to prove causal connection is preponderance of the evidence. *Id.*

The second method that has been used to ensure causal connection in internal failure cases is to require proof that an unusual event or activity precipitated the injury. Presumably, this requirement was used to prevent compensating a person predisposed to internal failure where the preexisting condition contributed more to the injury than his usual work activity. The following internal failure cases illustrate that evidence of an unusual event or activity is necessary to prove causation. *Billings*

*Computer Corp. v. Tarango,* 674 P.2d 104, 106–07 (Utah 1983); *Sabo's Electronic Service v. Sabo,* 642 P.2d 722, 726 n. 12 (Utah 1982); *Church of Jesus Christ of Latter-Day Saints v. Industrial Commission,* 590 P.2d 328, 329 (Utah 1979); *IGA Food Fair v. Martin,* 584 P.2d 828, 829 (Utah 1978); *Nuzum v. Roosendahl Construction & Mining Corp.,* 565 P.2d 1144, 1146 (Utah 1977); *Jones v. California Packing Corp.,* 121 Utah 612, 244 P.2d 640 (1952); *Robertson v. Industrial Commission,* 109 Utah 25, 163 P.2d 331 (1945); *Thomas D. Dee Memorial Hospital Ass'n v. Industrial Commission,* 104 Utah 61, 138 P.2d at 233; *see Schmidt,* 617 P.2d at 697–99 (Crockett, J., dissenting); *Farmer's Grain Cooperative v. Mason,* 606 P.2d 237, 238–39 (Utah 1980); *Mellen v. Industrial Commission,* 19 Utah 2d 373, 374, 431 P.2d 798, 799 (1967); *Purity Biscuit,* 115 Utah at 30, 201 P.2d at 975 (Latimer, J., dissenting). Defendants argue that any rule that awards compensation based on usual exertion will open the floodgates for payment of benefits for all internal injuries that coincidentally occur at work. They claim that the unusual exertion requirement is necessary to prevent the employer from becoming a general insurer. They argue that without the unusual exertion rule, employment opportunities for persons with a history or indication of physical disability or handicap will be reduced.

Despite precedent supporting the "unusual exertion" rule, the claimant urges us to follow a separate line of authority that awards compensation for injuries that occur during usual and ordinary workplace activity. These cases typically award compensation where the claimant was engaged in a workplace activity and where there is adequate evidence of medical causation. *See, e.g., Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888 (Utah 1981) (award for compensation affirmed for a coal miner's back injury despite absence of unusual incident); *Schmidt v. Industrial Commission,* 617 P.2d at 695 (compensation awarded for

---

5. In Nebraska, an enhanced standard of proof is still used where the employee suffers from a preexisting condition. *See Mann v. City of Omaha,* 211 Neb. 583, 592, 319 N.W.2d 454, 458 (1982).

back injuries arising from ordinary duties upon proof of medical causal connection between workplace exertions and the injury); *Residential and Commercial Construction Co. v. Industrial Commission,* 529 P.2d 427 (Utah 1974) (carpenter's back injury from lifting, bending, and twisting in the ordinary course of work compensable); *Powers v. Industrial Commission,* 19 Utah 2d 140, 427 P.2d 740, 742 (1967) (awarding compensation to fireman for exertions in the normal course of employment—the Court rejecting the unusual exertion test in favor of ordinary exertion); *Baker v. Industrial Commission,* 17 Utah 2d 141, 405 P.2d 613 (1965) (back injury from filing papers in lower drawer of cabinet compensable); *Purity Biscuit Co. v. Industrial Commission,* 115 Utah 1, 201 P.2d 961 (1949). Although the usual exertion rule was questioned in *Mellen v. Industrial Commission,* 19 Utah 2d at 375–76, 431 P.2d at 800, that decision failed to explicitly overrule the usual exertion line of cases. Moreover, *Residential and Commercial Construction Co., Schmidt,* and *Kaiser Steel* have awarded compensation for usual workplace activity after the *Mellen* decision. Clearly, the usual exertion rule is not simply an aberration in Utah law.

When read in chronological sequence, our opinions demonstrate an inconsistent and confused approach to determining when an accident arose out of or in the course of employment. Much of this confusion can be traced to fundamental problems stemming from the use of the usual-unusual distinction as a means of proving causation. Larson criticizes the unusual exertion requirement by itself as a "clumsy and ill-fitting device with which to ensure causal connection." Larson, *supra,* § 38.-81, at 7–270. The problems in determining what activities were usual or unusual were

recognized as long ago as 1949 when Justice Wolfe wrote that a "Pandora's box of difficulties ... may be opened by the refinements between usual and unusual, exertion and overexertion, ordinary and extraordinary exertion measured by the individual involved or by the industrial function performed by him or both." *Purity Biscuit,* 115 Utah at 23, 201 P.2d at 972 (Wolfe, J., concurring specially). The contents of the Pandora's box feared by Justice Wolfe are now evident in the plethora of our cases struggling with a definition of a compensable accident based upon the usualness or ordinariness of an activity.

Professor Larson has also criticized the usual-unusual distinction because the ordinariness of the activity fails to consider that some occupations routinely require a usual exertion capable of causing injury. Likewise, other occupations, such as deskwork, require so little physical effort that an "unusual exertion" may be insufficient to prove that the resulting accident arose out of the employment. Larson, *supra,* § 38.81, at 7–270.[6]

Because we find the present use of the usual-unusual distinction unhelpful and our prior precedent inconsistent, we take this opportunity to examine an alternative causation analysis that may better meet the objectives of the workers' compensation laws. We are mindful that the key question in determining causation is whether, given this body and this exertion, the exertion in fact contributed to the injury. *Id.* § 38.82, at 7–271; *Purity Biscuit,* 115 Utah at 23, 201 P.2d at 972 (Wolfe, J., concurring specially).

The language "arising out of or in the course of his employment" found in U.C.A., 1953, § 35–1–45 (Supp.1986), was apparently intended to ensure that compensation is only awarded where there is a

---

6. Larson's observation is consistent with this Court's rationale for rejecting the unusual exertion requirement in *Purity Biscuit,* 115 Utah at 16, 201 P.2d at 968:

[I]f [overexertion] is the test no one will ever know what this court will consider sufficient overexertion. Also under that test if the work

usually required by the job is so great that it would break the strongest man even he will not be able to recover. But if it is more than usual exertion which causes the injury the employee can recover no matter how light the work is which causes the injury.

*Id.*

sufficient causal connection between the disability and the working conditions. The causation requirement makes it necessary to distinguish those injuries which (a) coincidentally occur at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace, and (b) those injuries which occur because some condition or exertion required by the employment increases the risk of injury which the worker normally faces in his everyday life. *See Bryant v. Masters Machine Co.,* 444 A.2d 329, 337 (Me.1982). Only the latter type of injury is compensable under U.C.A., 1953, § 35–1–45. There is no fixed formula by which the causation issue may be resolved, and the issue must be determined on the facts of each case.

Professor Larson has suggested a two-part causation test which is consistent with the purpose of our workers' compensation laws and helpful in determining causation. We therefore adopt that test. Larson suggests that compensable injuries can best be identified by first considering the legal cause of the injury and then its medical cause. Larson, *supra,* § 38.83(a), at 7–273. "Under the legal test, the law must define what kind of exertion satisfies the test of 'arising out of the employment' ... [then] the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this [injury]."[7] Larson, *supra,* § 38.83(a), at 7–276 to –277.

1. *Legal Cause*—Whether an injury arose out of or in the course of employment is difficult to determine where the employee brings to the workplace a personal element of risk such as a preexisting condition. Just because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation. Our cases make clear that "the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable...." *Powers v. Industrial Commission,* 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (1967) (footnote omitted). To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition. This additional element of risk in the workplace is usually supplied by an exertion greater than that undertaken in normal, everyday life. This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from a personal risk rather than exertions at work. Larson, *supra,* § 38.83(b), at 7–278. Larson summarized how the legal cause rule would work in practice as follows:

---

**7.** Cases from other jurisdictions which have accepted the dual-causation standard suggested by Larson include: *Market Foods Distribs., Inc. v. Levenson,* 383 So.2d 726 (Fla.Dist.Ct.App.1980) (claimant with preexisting spinal disease denied compensation where injury could have been triggered at any time during normal movement and exertion at work not greater than typical nonemployment exertion); *Guidry v. Sline Indus. Painters, Inc.,* 418 So.2d 626 (La.1982) (claimant granted compensation where injury resulted from stress, exertion, and strain greater than that in everyday nonemployment life); *Bryant v. Masters Mach. Co.,* 444 A.2d 329 (Me. 1982) (claimant with preexisting condition awarded compensation for back injury resulting from fall from his stool at work because of increased risk of falling where employees moved around him at work); *Barrett v. Herbert Eng'g, Inc.,* 371 A.2d 633 (Me.1977) (claimant with preexisting back condition denied compen-

sation for injury resulting from working at normal gait since there was no work-related enhancement of personal risk); *Mann v. City of Omaha,* 211 Neb. 583, 319 N.W.2d 454 (1982) (policeman with history of heart disease awarded compensation for heart attack at home where claimant's physician testified that attack was caused by stress of police work rather than personal risk factors); *Sellens v. Allen Prods. Co.,* 206 Neb. 506, 293 N.W.2d 415 (1980) (claimant with preexisting heart problems denied compensation for heart attack suffered while unloading 28–pound cases from truck trailer despite sedentary nonworking lifestyle using objective standard of average worker in nonemployment life); *Couture v. Mammoth Groceries, Inc.,* 116 N.H. 181, 355 A.2d 421 (1976) (claimant with no preexisting heart problems awarded benefits upon proof that lifting beef medically caused the fatal heart attack).

If there is some personal causal contribution in the form of a [preexisting condition], the employment contribution must take the form of an exertion greater than that of nonemployment life....

If there is no personal causal contribution, that is, if there is no prior weakness or disease, any exertion connected with the employment and causally connected with the [injury] as a matter of medical fact is adequate to satisfy the legal test of causation.

*Id.* Thus, where the claimant suffers from a preexisting condition which contributes to the injury, an unusual or extraordinary exertion is required to prove legal causation. Where there is no preexisting condition, a usual or ordinary exertion is sufficient.[8]

■ We also accept Larson's suggestion that the comparison between the usual and unusual exertion be defined according to an objective standard. "Note that the comparison is not with *this employee's* usual exertion in *his employment* but with the exertions of normal nonemployment life of this or any other person." Larson, *supra,* § 38.83(b), at 7–279 (emphasis in original). *See also Johns-Manville Products v. Industrial Commission,* 78 Ill.2d 171, 178, 35 Ill.Dec. 540, 544, 399 N.E.2d 606, 610 (1979) (compensation denied where the risk of the employment activity "is no greater than that to which he would have been exposed had he not been so employed"); *Strickland*

*v. National Gypsum Co.,* 348 So.2d 497, 499 (Ala.Civ.App.1977) (employment risk must be " 'a danger or risk materially in excess of that to which people not so employed are exposed....' " *Quoting* from *City of Tuscaloosa v. Howard,* 55 Ala.App. 701, 705–06, 318 So.2d 729, 732 (1975)). *But see Market Foods Distributors, Inc. v. Levenson,* 383 So.2d 726, 727 (Fla.Dist.Ct. App.1980) (subjective test: "the employment must involve an exertion greater than that normally performed by the employee during his non-employment life"). Thus, the precipitating exertion must be compared with the usual wear and tear and exertions of nonemployment life, not the nonemployment life of the particular worker.

We believe an objective standard of comparison will provide a more consistent and predictable standard for the Commission and this Court to follow. In evaluating typical nonemployment activity, the focus is on what typical nonemployment activities are generally expected of people in today's society, not what this particular claimant is accustomed to doing. Typical activities and exertions expected of men and women in the latter part of the 20th century, for example, include taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing the stairs in buildings. By

---

**8.** Larson highlights the difference between the unusual-usual exertion test with the rule we today adopt with the following examples of extreme cases in the heart attack area:

Suppose X's job involves frequent lifting of 200–pound bags, and one such 200–pound lift medically produces a heart attack. Under the old unusual-exertion rule there would be no compensation, regardless of previous heart condition. Under the suggested rule there would be compensation, even in the presence of a history of heart disease, because people generally do not lift 200–pound weights as a part of nonemployment life, and therefore this episode cannot be ascribed to the ordinary wear and tear of life.

Suppose Y's job involves no lifting. Suppose he lifts a 20–pound weight on the job, and suppose there is medical testimony that this lift caused his heart attack. Under the old test, exclusively concerned with the com-

parison between this employee's usual exertions and the precipitating exertion, there would be compensation. Under the suggested rule the result would depend on whether there was a personal causal element in the form of a previously weakened heart. If there was not, compensation would be awarded, since the employment contributed something and the employee's personal life nothing to the cause of the collapse. If there was [a previously weakened heart], compensation would be denied in spite of the medical causal contribution, because legally the personal causal contribution was substantial, while the employment added nothing to the usual wear and tear of life—which certainly includes lifting objects weighing 20 pounds such as bags of golf clubs, minnow pails, and step ladders. Larson, *supra,* § 38.83, at 7–280–81 (footnote omitted).

using an objective standard, the case law will eventually define a standard for typical "nonemployment activity" in much the way case law has developed the standard of care for the reasonable man in tort law.

2. *Medical Cause*—The second part of Larson's dual-causation test requires that the claimant prove the disability is medically the result of an exertion or injury that occurred during a work-related activity. The purpose of the medical cause test is to ensure that there is a medically demonstrable causal link between the work-related exertions and the unexpected injuries that resulted from those strains. The medical causal requirement will prevent an employer from becoming a general insurer of his employees and discourage fraudulent claims.

> With the issue being one primarily of causation, the importance of the ... medical panel becomes manifest. It is through the expertise of the medical panel that the Commission should be able to make the determination of whether the injury sustained by a claimant is causally connected or contributed to by the claimant's employment.

*Schmidt,* 617 P.2d at 697 (Wilkins, J., concurring). Under the medical cause test, the claimant must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability. In the event the claimant cannot show a medical causal connection, compensation should be denied.[9]

### III.

We now undertake to apply the foregoing analysis to the case before us. In reviewing findings of fact of the Industrial Commission, we determine whether there is substantial evidence to support the Commission's findings. *Champion Home*

*Builders v. Industrial Commission,* 703 P.2d 306, 307 (Utah 1985).

We have previously stated that the key element of whether an injury occurred "by accident" is whether the injury was unexpected. After reviewing the record, we find no substantial evidence that the injury was not unexpected. It is clear from the uncontradicted testimony of the claimant that he experienced an unexpected and unanticipated injury to his back as he lifted a crate of milk in the cramped area of the cooler. Although the claimant had injured his back on prior jobs, he had not complained of pain or limitations at his job with Kent's Foods. There is no evidence which indicates that this injury was predictable or that it developed gradually as with an occupational disease or progressive back disorder. While the employer's report of injury and the medical records do not corroborate that a sudden and identifiable injury occurred in the cooler, the reports are unhelpful in determining whether the injury was unexpected.

It appears that the administrative law judge applied the "unusual event or trauma" rule in defining an accident. We have rejected that test in lieu of a test based on unexpectedness. Moreover, the administrative law judge's emphasis on prior injuries is not determinative of whether an accident occurred. We have previously held that the aggravation or "lighting up" of a preexisting condition by an internal failure is a compensable accident. *Powers v. Industrial Commission,* 19 Utah 2d 140, 143, 427 P.2d 740, 743 (1967). We conclude therefore that the decision of the Commission that the claimant's injury was not "by accident" was not based on the evidence, and that decision is, therefore, erroneous.

The key issue in this case, like most internal failure cases, is whether the injury "arose out of or in the course of

---

**9.** Evidence of the ordinariness or usualness of the employee's exertions may be relevant to the medical conclusion of causal connection. Where the injury results from latent symptoms with an illness such as heart disease, proof of medical causation may be especially difficult. Larson's treatise cites many examples of cases where compensation claims were defeated because of inadequate proof of medical causation. *See* Larson, *supra,* § 38.83(i), at 7–319 to –321. *Compare Guidry v. Sline Indus. Painters, Inc.,* 418 So.2d 626 (La.1982) (heart attack triggered by stress, exertion, and strain greater than sedentary life of average worker compensable).

employment." Since the claimant had previous back problems, to meet the legal causation requirement he must show that moving and lifting several piles of dairy products weighing thirty to fifty pounds in the confined area of the cooler exceeded the exertion that the average person typically undertakes in nonemployment life. The evidence presented by the claimant was insufficient for us to make a determination regarding legal causation. It is unclear from the record how many crates were moved by the claimant, the distance the crates were moved, the precise weight of the crates, and the size of the area in which the lifting and moving took place. Because the claimant did not have the benefit of the foregoing opinion, we remand for further fact-finding on this issue.

Moreover, the record is insufficient to show medical causation. It is unclear from the medical reports whether the doctors were aware of the specific incident in the cooler. Further, the case was not submitted to a medical panel for its evaluation. Without sufficient evidence of medical causation, we are unable to determine whether there is a medically demonstrable causal link between the lift in the cooler and the injury to the claimant's back. We therefore remand to the Industrial Commission for additional evidence and findings on the question of medical causation.

The decision of the Commission is vacated and remanded.

HOWE and ZIMMERMAN, JJ., concur.

HALL, Chief Justice: (concurring and dissenting).

I concur in remanding this case to the Commission for the purpose of determining whether the work incident aggravated a preexisting condition such as would warrant an award of compensation.[1] However, I do not join the Court in adopting an "unexpected result" standard to be applied in determining the existence of a compensable accident.

I do not believe that this Court has "misconstrued the historical and logical" definition of "by accident" in the bulk of its recent cases concerning the issue at bar. The majority's reliance upon *Purity Biscuit Co. v. Industrial Commission*[2] is misplaced. The holding therein is without precedential value because it has been simply ignored.[3] The only case in which this Court followed *Purity Biscuit* is *Schmidt v. Industrial Commission,*[4] which support is similarly without precedential value because it has also been ignored beginning with *Painter Motor Co. v. Ostler,*[5] the very next accident case handed down. In that case, the Court cited and relied upon *Carling v. Industrial Commission*[6] and again defined "accident" as an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events. In my view, *Purity Biscuit* and *Schmidt* emerge as aberrations in our post-war case law.

The majority opinion holds that henceforth an injury by accident "is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury." (Emphasis in original.) However, the legislature, whose prerogative it is to establish policy, has chosen wording which precludes such an interpretation. The reasoning of Justice Latimer's dissent in *Puri-*

---

1. *Powers v. Industrial Comm'n,* 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (1967).

2. 115 Utah 1, 201 P.2d 961 (1949).

3. *Emery Mining Corp. v. DeFriez,* 694 P.2d 606 (Utah 1984); *Giles v. Industrial Comm'n,* 692 P.2d 743 (Utah 1984); *Frito-Lay, Inc. v. Jacobs,* 689 P.2d 1335 (Utah 1984); *Billings Computer Corp. v. Tarango,* 674 P.2d 104 (Utah 1983); *Sabo's Elec. Serv. v. Sabo,* 642 P.2d 722 (Utah 1982); *Kaiser Steel v. Monfredi,* 631 P.2d 888 (Utah 1981); *Farmer's Grain Cooperative v. Ma-*

*son,* 606 P.2d 237 (Utah 1980); *Church of Jesus Christ of Latter-Day Saints v. Industrial Comm'n,* 590 P.2d 328 (Utah 1979); *Redman Warehousing Corp. v. Industrial Comm'n,* 22 Utah 2d 398, 454 P.2d 283 (1969); *Carling v. Industrial Comm'n,* 16 Utah 2d 260, 399 P.2d 202 (1965).

4. 617 P.2d 693 (Utah 1980).

5. 617 P.2d 975 (Utah 1980).

6. 16 Utah 2d 260, 399 P.2d 202 (1965).

*ty Biscuit* illustrates the shortcomings of the majority's interpretation. The word "accident," when viewed in isolation, may be used to denote both an unexpected occurrence which produces injury as well as an unexpected injury. The word "injury," on the other hand, denotes a result and not a cause. Had the legislature only used the word "injury" in section 35–1–45 (U.C.A., 1953, § 35–1–45 (Repl. Vol. 4B, 1974 ed., Supp.1986)), then that statute would cover all results regardless of the cause. Had the legislature only used the word "accident," then I would agree with the majority's holding today that the legislature intended to cover both the cause and the result. In fact, however, the legislature has used both words "injury" and "accident." It follows that the word "accident" must be interpreted as focusing upon the cause and not the result. In short, the majority's interpretation writes the word "injury" out of the statute. Such a decision is unwarranted in my view.

The legislature recently amended section 35–1–45,[7] but chose to leave intact the standard which limits the payment of compensation to those injured "by accident arising out of or in the course of ... employment." [8] Moreover, the singular "injury by accident" standard has not been altered or amended since its inception in 1917.[9] The legislature thus being satisfied with the Court's interpretation of the term "accident" in the long line of cases beginning with *Carling v. Industrial Commission,*[10] I decline to embark upon a new effort to redefine that term.

STEWART, Justice: (dissenting).

I dissent. The majority defines the statutory term "accident" to mean "unexpected result," regardless of whether it is produced by a usual or an unusual event. The majority also defines the term "arising out of or in the course of employment" to

impose legal and medical causation requirements. *See* U.C.A., 1953, § 35–1–45.

Curiously, the requirement of "legal causation" has two different meanings, depending upon the physical condition of the worker at the time he is injured. A worker having no preexisting medical condition or handicap need only prove that the accident was caused by a "usual or ordinary exertion." But for congenitally handicapped persons and for persons who have suffered preexisting industrial injuries (which presumably have left the worker with some physical weakness or deterioration), legal causation has a different meaning. Such a worker may receive compensation only if the "employment contribution" to the internal breakdown is "greater than that of nonemployment life.". According to the majority, such a worker must now prove that his internal breakdown was caused by *"an unusual or extraordinary exertion"* in order to establish the requisite legal causation, even though the majority opinion itself criticizes at length the "usual-unusual distinction as a means of proving causation." How the majority can reject that standard for persons having no preexisting condition, yet embrace that standard for persons with preexisting conditions, is baffling.

Furthermore, the difference between the "unusual or extraordinary exertion" which a worker with a preexisting condition must demonstrate and the "usual exertion" which a person with no preexisting condition must demonstrate is far from clear. The latter standard is to be judged with respect to the " 'normal nonemployment life of this or any other person.' " The Court emphasizes that the "precipitating exertion must be compared with the usual wear and tear and exertions of nonemployment life, not the nonemployment life of the particular worker." What the term "usual wear and tear and exertions of nonemployment" means is not defined by the

7. Act of Jan. 27, 1984, ch. 75, § 1, 1984 Utah Laws 610, 610.

8. U.C.A., 1953, § 35–1–45 (Repl.Vol. 4B, 1974 ed., Supp.1986).

9. Act of March 18, 1917, ch. 100, § 52a, 1917 Utah Laws 306, 322–23.

10. 16 Utah 2d 260, 399 P.2d 202 (1965).

majority. The few examples set out do little to explain the concept aimed at, other than to suggest that the term means something more than simple, life-sustaining activities.

I wholly fail to understand why persons who have a preexisting condition should be placed in the disadvantaged position, indeed the near-remediless position, that the majority opinion imposes upon them. The purpose of the Second Injury Fund is to provide compensation for workers who have preexisting medical conditions and therefore run a greater risk of injury when they expose themselves to the hazards of the work place. But the law should encourage such persons to work rather than encouraging them to abandon the work force for some kind of unearned support.

This Court has repeatedly stated that the Second Injury Fund was designed to encourage employers to hire persons with preexisting conditions by spreading the risk throughout the industry to assure such persons that their injuries will be cared for without imposing extraordinary liabilities on the employers who hire them. *Intermountain Smelting Corp. v. Capitano*, 610 P.2d 334, 337 (Utah 1980); *McPhie v. United States Steel Corp.*, 551 P.2d 504, 505 (Utah 1976). Society certainly ought to favor those policies which encourage people to work, rather than policies that deter employers from offering gainful employment to those who have a higher risk of work-related injury. There is little personal or social benefit from a policy that tends to discourage persons from working because of prior injuries or disabilities.

Further, it is fundamentally unfair and flatly inconsistent with the basic purposes of the workmen's compensation laws to impose higher standards for compensation on those with preexisting medical conditions than on those without. Tort law generally does not do so. A defendant in a negligence action is required to take the victim as the defendant finds him; whatever unusual vulnerabilities the victim may have are disregarded. That principle should not be, and until now has not been,

different in workmen's compensation law, which is really a substitute for tort law remedies. In short, handicapped or previously injured persons who are injured by an industrial accident are simply discriminated against by having to meet the majority's rigorous legal cause requirement.

I am also unable to understand how an administrative law judge, the Industrial Commission, or an appellate court is supposed to determine what "typical nonemployment activities" are "in today's society," as they now must do for the purpose of determining legal causation for workers with preexisting medical conditions. Does that mean what a typical sixty-five-year-old does or a typical twenty-one-year-old does during his or her nonemployment activities? Is it what a professional football player does in his leisure time or what a ballet dancer does? Is it what a sedentary worker does in his or her off-hours or what a forest ranger does?

Instead of defining a meaningful standard, the majority provides examples which supposedly illustrate the unarticulated principle. The examples "include taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing the stairs in buildings." These few examples, which I find to be arguable in any event since they reflect only what some people may do from time to time, do not substitute for a legal standard. I seriously wonder whether changing a flat tire on an automobile is a typical activity in today's society, and I do not know how much luggage the "typical" individual lifts or how far he or she carries it. The point is that the majority has not set forth a workable standard at all. In fact, I have serious doubt that such an artificial construct as "typical nonemployment activities" will produce more fair and rational decisions than our past cases. The majority simply assumes a "typical" individual for the purpose of establishing a rational standard. Unfortunately, disabilities happen to real people, not to "average" people, and the law has always recognized

as much. In short, I do not think that the majority's newly established standard will produce decisions one whit more consistent or rational than those produced in the past.[1]

The majority also holds that an injured person must prove that the disability is "medically the result of an exertion or injury that occurred during a work-related activity." With a degree of hope that I think is unwarranted, the majority states that "[t]he medical causal requirement will prevent an employer from becoming a general insurer of his employees and discourage fraudulent claims." I am fearful that that hope is seriously misplaced.

Certainly Professor Larson, largely the source of the Court's new standards and analysis, is highly acclaimed in this field of law, but there is much to be said for the case-by-case approach in hammering out legal doctrine, even if it does on occasion produce inconsistencies. I readily concede that present law needs to be rationalized and that some cases should be overruled because they are hopelessly inconsistent with other cases, but I do not believe that the law needs to be revolutionized in such a manner as to defeat those humane policies intended to allow for the injuries of workers who come to the work place in an impaired condition.

I also join the Chief Justice's dissent.

---

1. In my view, the decisions of this Court are generally reconcilable with only a few glaring exceptions and most of them prior to 1980. That there are more inconsistencies the further back one goes in our body of law is not particularly unexpected. In any event, I doubt that the new approach will produce unwavering consistency over the years.